### COLTON vs. DUNHAM and WADSWORTH.

Where upon a loan of money, a premium or profit beyond the legal rate of interest is either directly or indirectly secured to the lender, the loan will be usurious, unless it is attended by some contingent circumstances which subject the money lent to evident hazard.

A mere nominal contingency, attended by no real hazard of the principal of the money lent, will not divest the transaction of its usurious character.

The ordinary risk of the death or insolvency of the borrower, is not such a hazard of the money lent as will authorize the lender to reserve a profit on the loan beyond the legal rate of interest.

If there is a negotiation for a loan or a advance of money, and the borrower agrees to return the amount advanced at all events, it is a contract of

1830.

Colton
v.
Dunham.

lending within the meaning of the statute against usury; and if a profit beyond the legal rate of interest is reserved or agreed to be paid, the contract is usurious.

Under the regulations of the chamber of commerce, the agent is entitled to two and a half per cent. for effecting a loan of money and becoming security for the re-payment thereof; but he is not entitled to an additional commission for paying over the money to the principal or upon his orders.

Where a loan is to be repaid by an investment in merchandize for the lender, the merchandize must be estimated at its actual costs in specie or other circulating medium which is legal tender at the place of payment, and not at its nominal costs in a depreciated of fictitious currency.

May 24th.

IN December, 1824, the complainant was the owner of the brig Ortolan, and was about to proceed on a voyage from New-York to Rio Grande. Being short of funds to complete the cargo of his brig, he applied to the defendants who were merchants in New-York, to assist him in completing the cargo, and proposed that they should advance $3000, and become interested with him in the profits of the cargo to that extent. The defendants finally agreed to make the advance of $3000, which was to be repaid by the complainant at Rio Grande, with addition of 20 per centum thereon by being invested in the purchase of hides and horns on account of the defendants. This sum being insufficient to complete the cargo, a further loan was effected by the complainant from the Pacific Insurance Company upon respondentia, and upon the guarantee of the defendants for its re-payment. This sum went into the defendant's hands, together with a further sum of $500 received on account of passage money. The defendants charged a commission of two and a half per cent. for procuring the loan from the insurance company. Including that commission, and a further commission of two and a half per cent. on the whole amount they either advanced to the complainant, paid on his orders or expended for his benefit, the sum of $7483,33, leaving a balance due to them, according to their account rendered in January, 1825, of $3982,33. From this sum $75 was deducted for some cause not explained in the pleadings in this suit; and the complainant gave them a written agreement for the balance in the following terms: "Messrs. E. W. Dunham, & Co. New-York, Jan. 27, 1825. Gentlemen, Having advanced me thirty nine hundred and seven $\frac{33}{100}$ dol-

lars in cash and goods for the purchase of part of the cargo of the brig Ortolan, bound to Rio Grande, I hereby acknowledge the receipt of that sum ; and as by our agreement you are to receive that sum at Rio Grande, with twenty per centum thereon, in lieu of the profits on the merchandize shipped in her, I hereby engage to pay you by vesting the above mentioned sum, with the twenty per centum added, in Rio Grande, in hides and horns, and ship them to your address and for your account and risk, in the brig Conveyance, or any other vessel which you shall send out consigned to me. And as an inducement to you to send out the brig conveyance, or some other good vessel, to my address, I engage to freight with her at least three thousand five hundred hides at the rate of fifty cents each to New-York, besides horns at the usual freight, on my account or those of my friends, besides those to be shipped to your account. Your obedient servant, *Walter Colton.*"

A further sum of $72,25 was paid for the complainant by the defendants after he left New-York, of which they soon after advised him. The defendants also shipped on board the complainant's brig 100 barrels of flour, to be sold by him at Rio Grande, on their account; the profits on which were to be equally divided between the parties. The complainant arrived at Rio Grande about the middle of April after he left New-York, and disposed of his cargo early in May. The Conveyance did not arrive at Rio Grande until the first of August, at which time no part of the return cargo had been purchased by the complainant. On the 23d of October, 1825, the complainant shipped on board the conveyance 558 dry ox and cow hides, and 100 arrobas of hair, for the purpose of paying the respondentia bond given to the insurance company ; and which were addressed as directed in the instructions of the defendants. The complainant also at the same time shippped 600 hides and 10,000 horns, on account of the defendants, for the payment of the advances made by them in New-York together with the premium thereon; and also two other parcels on account of the defendant's share of the proceeds of the flour and a quantity of salt sold upon their account at Rio Grande. The complainant likewise shipped

1830.

Colton
v.
Dunham.

on board the same vessel a quantity of horse-hides and hair on his own account, which were received and sold by the defendants. The average weight of the hides shipped to pay the respondentia bond was about six pounds more than the weight of those shipped on account of the defendants, although they were invoiced at the same price. The defendants insisted that the hides were bought in numero, at the same time and at the same prices; and that in the account of sales they should be averaged and credited according to their weight. The return cargo purchased on account of the defendants was invoiced and purchased in reas and millereas, the nominal currency of Rio Grande, and were charged by Colton at $1,25 for each millerea. But the defendants insisted that the Spanish milled dollar at Rio Grande was equal in value to a millerea, and that the accounts should be stated accordingly. These as well as other difficulties having arisen in relation to the adjustment of the balance between the parties, the complainant filed his bill in this cause for an account; and he insisted, among other things, that the agreement for the payment of twenty per centum on the advances of the defendants was unconscientious and usurious, and ought not to be enforced beyond the legal rate of interest. The cause was heard on pleadings and proofs.

S. A. Foot & J. Greenwood, for the complainant. The contract for the payment to the defendants of 20 per cent. upon their loan to the complainant was usurious. This was a clear contract of lending. The repayment of the money advanced depended upon no contingency. Although the goods shipped for Rio Grande had been lost, yet the defendants would have been entitled to repayment with 20 per cent. interest. The 20 per cent. was not to be paid out of the profits of the adventure. The investment of the defendant's loan in a return cargo was for their benefit. (Jestons v. Brooke, Cowper, 793. Hoyer v. Edwards, id. 112.) Monies overpaid beyond the legal interest in pursuance of an usurious contract will be ordered to be repaid. (Dey v. Dunham, 2 John. Ch. R. 182.) The defendants are only

entitled to legal interest from the time of the actual payment of their loan to the complainant. They are not entitled to a commission for paying over to the complainant the money loaned from the Pacific Insurance Company. Nor are they entitled to any compensation for their guarantee of the payment of the notes taken upon the sale of the complainant's goods. Their services in this respect were rendered without the complainant's request. And they had no right to average the weight of the hides; but are bound to account to the complainant for the proceeds actually realized from the sale of the hides purchased on his own account. As to the question whether the laws of Rio Grande or of New-York are to govern as to the construction and effect of the contract between the complainant and defendants, and as to the lex loci generally, the counsel cited *Andrews* v. *Herriot*, (4 Cowen's Rep. 510 and note;) *Thompson* v. *Ketcham*, (4 John. R. 285;) *James* v. *Allen*, (1 Dallas' Rep. 191;) *Winthrop* v. *Pepoon, Otis & Co.*, (1 Bay's Rep. 468;) *Slacum* v. *Pomery*, (6 Cranch's Rep. 221;) *Lanusse* v. *Barker*, (3 Wheaton's Rep. 101, 146;) *Kissam* v. *Burrall*, Kirby's Rep. 326;) *Fanning* v. *Consequa*, (17 John. R. 511;) *Winthrop* v. *Carleton*, (12 Mass. Rep. 4;) *Gaillard* v. *Gaillard*, (1 Nott & McCord's Rep. 67;) *Emory* v. *Grenough*, (3 Dallas' Rep. note, 370 to 377.)

*J. Talmadge*, for the defendants. The loan to the complainant by the defendants was not usurious. The hazard to the principal divests it of its usurious character. The profits upon the outward cargo to Rio Grande are extravagant; but upon the return cargo a loss is always sustained. This circumstance puts at rest the question of usury. The compensation to the defendants was to proceed from the profits upon the outward cargo, and was not to be paid in the character of interest upon the sum loaned. The defendants were interested in the adventure. The commissions charged by them are authorized by commercial usage. And as they sold a large quantity of hides for the complainant, it was just to average the result.

1830.

Colton
v.
Dunham.

THE CHANCELLOR. It is admitted by the counsel for both parties that there must be a reference to state the accounts between them ; but the court is at this time called upon to decide certain questions arising out of the pleadings and proofs, by way of special directions to the master, settling the principles on which the accounts are to be stated. On the part of the complainant it is insisted, 1. That the agreement to pay 20 per centum on the advances was illegal and usurious ; and that if it was not usurious, it was unconscientious and oppressive, and ought not to be enforced ; 2. That the defendants are not entitled both to commissions and interest on their advances, except as to the articles actually purchased by themselves ; 3 That they are entitled to no commissions on the money loaned of the insurance company, except the two and a half per cent. for procuring and guarantying payment of that loan ; 4. That they had no right to average the weight of the 558 ox hides shipped on account of the respondentia bond, with those sent to the defendants on account of their advances ; and 5. That they are not entitled to a commission for guarantying payment on the sale of the complainant's hides and hair. The reverse of these propositions is contended for on the other side ; and the defendants also insist that the millerea of Rio Grande is only equal in value to a Spanish milled dollar, and that the hides and horns purchased for them in payment of their advances should have been charged at that rate only.

In relation to the first question, it is evident the agreement between the parties was in fact nothing but a loan or advance of money, to be repaid by the complainant on his arrival at Rio Grande, together with a premium of 20 per centum on the loan. The English as well as the American reports are filled with cases arising out of the various devices and expedients which have been adopted to evade the provisions of the statutes which limit the rate of interest to be received on the loan or forbearance of money. But on examination it will be found there is a uniform and settled principle running through all these cases, with scarcely any exceptions. Wherever by the agreement of the parties a premium or profit beyond the legal rate of interest, for a loan

or advance of money, is either directly or indirectly secured to the lender, it is a violation of the statute unless the loan or advance is attended with some contingent circumstance by which the principal is put in evident hazard. A contingency merely nominal, attended with little or no hazard to the principal of the money loaned or advanced, cannot alter the legal effect of the transaction. And the risk of loss by the death or insolvency of the borrower is not such a contingency or hazard as will take the case out of the operation of the statute. That is the ordinary risk which every man runs who lends money on personal security only; and if the contingency of the borrower's dying insolvent was to be deemed a hazard of the principal, or money lent, the statute of usury would be a d·ad letter. Where there is a negotiation for a loan or advance of money, and the borrower agrees to return the amount advanced at all events, it is a contract of lending within the spirit and meaning of the statute. And whatever shape or disguise the transaction may assume, if a profit beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious. In the case under consideration it was never the intention of either party that the defendants should have an interest in the cargo put on board the complainant's brig. If the goods had been lost on their passage to South America, he must have born the whole loss, and would have been liable to the defendants to the same extent as if the goods arrived in safety and a large profit was realized thereon. The investing of the amount in hides and horns at Rio Grande on their account, instead of remitting the money from that place, was never considered as a hazard on the part of the defendants. It was done for their benefit, and because they expected to realize a further profit out of the proceeds of that investment. If they sustained any loss in this case, it was one of those mercantile hazards which frequently occur; but it is evident from their letter of the 14th of March, 1825, they they expected to realize a handsome profit upon the cargo shipped on board of the Conveyance, in addition to their commissions and the 20 per cent. advance upon the loan to Colton. The account in

1830.

Colton
v.
Dunham.

this case must be stated by allowing to the defendants only legal interest on the amount of their advance, from the 27th of January, 1825, to the time when the same was paid or invested for them at Rio Grande. And if the complainant does not produce the original bills of parcels, showing when the investment was made, the interest must be cast up to the 23d of October, when the hides, &c. were shipped on board the defendant's vessel.

The defendants are not entitled to commissions for paying over the money borrowed of the insurance company, to the complainant or on his orders. The commission of two and a half per cent. for effecting the loan, and becoming security for the re-payment thereof, is admitted to be correct; and that is all to which they were legally entitled. I presume that question was settled between the parties at the time the receipt or agreement of the 27th of January, 1825, was given. The balance of the account, as stated on the 28th of January, is $3982,33, and the complainant's receipt is for the same sum, less $75, which is just the amount of the illegal commissions, included in that account, on the disbursement or payment of the money loaned on respondentia. That receipt must be considered as the liquidated amount of the defendant's advances and legal commissions up to and including the 28th of January; to which must be added the $72,75 afterwards paid by the defendants, as mentioned in their letter of the 14th March. I presume the error in that letter arose from their neglect to correct the account, by expunging therefrom the illegal commission so as to make it agree with the receipt given on the settlement thereof; and from that letter the error was transcribed into the complainant's account transmitted to them from Rio Grande.

As the complainant has produced no bills of parcels, showing the particular persons from whom the hides shipped for the defendants were purchased, or the times when, or the prices for which they were brought, and as his letters show that he had not purchased any hides previous to the arrival of the conveyance, the defendants' account of sales, averaging the hides, must be considered by the master as correct, unless the complainant produces the original bills of parcels

showing the separate purchase of the hides shipped for the defendants and the original bill of the 558 hides, or produces other sufficient and legal evidence before the master showing such purchases, and the persons from whom, and the prices at which they were made.

The defendants are not entitled to a commission on the sale of the complainant's hair and horse hides, as a guarantee commission. They were under no legal obligation to guarantee the payment by the purchasers, and there was no agreement that they should be responsible therefor. That claim must therefore be dissallowed. But from the facts in the case, the defendants are clearly entitled to the commission for selling the hides as well as the hair.

The only remaining question is as to the valuation of the millerea at $1,25. As I understand the case, 800 reas are a dollar, and the millerea is 1000 reas. But there is no coin or circulating medium of the country which answers to either the rea or the millerea; and that the actual value of the Spanish milled dollar, especially when restamped, was nearly equal to the nominal amount of a millerea. The advance of the defendants was to be repaid to them at Rio Grande in specie, or in something else which was a legal tender according to the laws of that country. If a Spanish milled dollar, and the other circulating medium there in the same proportion, would be received in payment of 900 or 1000 reas on the purchase of hides and horns, the complainant as a faithful agent was bound to purchase and pay for them at that rate. He cannot be permitted to make a speculation at the expense of the defendants, by paying them in a fictitious or depreciated currency. He can only be allowed so much as he actually paid for the property, in the circulating medium of the country which would have been a legal tender in the payment of his debt to the defendants. The master must ascertain the cost of the hides, &c. on that principle, and state the accounts accordingly. He is to have the usual power to examine the parties on oath, and to compel the production of books and papers. The question of costs and all further directions are reserved until the coming in of the report.