ALEXANDER FERGUSON, appellant, *v.* CHARLES H. SUTPHEN, appellee.

*Appeal from La Salle.*

In Equity, the doctrine is well settled, that a conveyance absolute in its terms may, by parol evidence, be shown to have been designed by the parties as a mortgage.

In Equity, no form which can be given to a particular contract, will preclude the borrower from the introduction of evidence to impeach it on the ground of usury. It is not the form, but the nature and substance of the contract, which must determine whether the instrument be not a mere device to obtain more than legal interest, and colorable only to evade the provisions of the statute.

Where usury is alleged, it may be proved by parol, and as a consequence, the written contracts of the parties may, by the same kind of evidence, be varied and contradicted. Such evidence is competent to show that a contract in the form of an absolute sale, was, in truth, but a security for an usurious loan.

The borrower of money on an usurious contract may tender to the lender, or bring into Court for his use, the amount actually advanced with the legal interest, and then file his bill for relief; and the Court will relieve him from the payment of the excess, and declare the securities to be void, and when necessary, direct them to be delivered up and cancelled.

It is purely a matter of discretion with the Court whether it will require a complainant to make proof, the defendant being in default.

Where money is paid into Court pending a suit in Chancery, and the decree does not show to whom it should be paid, the Court will, on the requisite proof being made, direct it to be paid to the person who is properly entitled to it.

Where a statute declares a contract to be void, it does not follow that either of the contracting parties can take advantage of it. A statute may so declare, and still but one of the parties be guilty of its violation. Under the laws declaring usurious contracts to be void, the lender is never allowed to take advantage of the statute, because he is the guilty party; but the borrower is permitted to do this, because he is not a *particeps criminis.* This principle applies to every contract declared to be void by the statute, in the making of which but one of the parties is *in pari delicto.*

A. and B. applied to C. for a loan of $1100, for the purpose of purchasing public lands, upon which they had made improvements, which were about to be sold by the Government. C. agreed to advance the money with the understanding that the lands should be bid off by him to secure him in the payment of the loan, and that they should pay him for the loan and forbearance $330 in each of the three following years, and $1,430, at the end of four years, when C. was to sell and convey the land to them. C. bid off the lands at $1·25 per acre, and the parties entered into a written agreement upon this basis, with the further stipulation that in default of any of the payments being made C. was authorized to declare the contract at an end, and

should he do so, all previous payments were to be forfeited, and A. and B. thenceforth were to be considered as the tenants at will of C. at an annual rent equal to ten per cent. interest on the $2,400, payable quarter yearly: *Held*, that the contract was usurious.

BILL IN CHANCERY for relief, &c., in the La Salle Circuit Court, filed by the appellee against the appellant, and heard before the Hon. John D. Caton, at the March term 1845, when a decree was rendered in favor of the complainant below.

The substance of the bill and the decree, and the testimony in the cause, will appear in the Opinion of the Court.

*J. Butterfield*, for the appellant.

In this case there is no dispute about the facts. The bill does not charge Taylor with any fraud, imposition or oppression, or with any violation of his agreement. The complainant does not pretend that the lands are not richly worth the full amount he contracted to pay for them, or that he will suffer any loss or injustice in being compelled to pay the amount he voluntarily stipulated to do. But without any excuse or mitigating circumstance in palliation of this attempt to defraud the heirs of Taylor, he comes here and asks this Court to relieve him, not only from the performance of a contract highly beneficial to himself, but to compel the defendants to convey to him eight hundred acres of land for less than one half the amount he contracted to pay.

It is well known that very large sums of money have been invested in the same manner; that Taylor invested his, in the purchase of Government lands at the public sales, where the sales were open to all bidders; that such purchases were made at the request of the occupants of the land, and that the purchasers have in such cases, instead of turning the settlers out of possession, entered into contracts to sell them the lands at a profit exceeding the legal rates of interest. Such purchases and contracts have been highly beneficial to the settlers; it has enabled them to purchase their lands and secure their homes; has promoted the settlement of the country; they have felt grateful to capitalists for

thus investing their money, and out of the thousands of settlers, who have been benefitted and become freeholders, and enriched by the acquisition of their lands in the same manner, not a lisp of complaint has been heard except from the complainant in this cause. Even his co-purchaser, Ballard, scorned to unite in such an odious and unconscionable attempt to avoid his agreement; he assigned his interest in the title bond to Sutphen upon the express condition that Sutphen should perform its covenants. Sutphen himself is the speculator, and by means of the arrangement he made with Taylor, he was enabled to secure to himself eight hundred acres of choice land, a quantity greatly exceeding the wants of any man for cultivation, and at a price which he does not pretend approximates to its value.

He bases his right to the relief sought for in his bill upon two grounds:

1. That Taylor held the title of the land in trust for him; and

2. That the transaction was usurious.

I shall contend and clearly show, that neither of these propositions are true.

I. Taylor purchased the land in question from the Government in his own right, and not as trustee for Sutphen and Ballard. The whole transaction shows that it never was the intention or contemplation of the parties that Taylor should purchase, or hold the land in trust; and the complainant, by his own act, is estopped from setting up a trust, express or implied.

1. There was no express trust.

All express trusts must be manifested and proved by some writing, signed by the party who is enabled to declare such trust, or they shall be utterly void and of no effect. Gale's Stat. 316, § 4.

Parol evidence is inadmissible to support an agreement set up in contradiction to a deed where no trust appears upon the face of the deed, nor any evidence or manifestation of it by writing. Parol evidence is inadmissible to show the trust. 1 Johns. Ch. R. 339, 341; 4 East, 576, top page and note.

All parol agreements made between the parties in relation to the said land, are void by the Statute of Frauds. 5 Cowen, 142; 5 Johns. Ch. R. 1, 19; 4 Johns. 242–4; 14 do. 359–60; 8 do. 253–4; Gale's Stat. 315.

The case in 4 Johns. 242, decides expressly, that all such parol agreements as were made in this case are void. Taylor, after the purchase, held the land absolutely, discharged of all parol agreements, and had a right to sell it to the complainant for what price he pleased without violating any legal agreement.

2. There was no resulting or implied trust, in favor of Sutphen and Ballard in this case.

Resulting trusts are strictly limited to cases where the purchase has been made in the name of one person, and the purchase money paid by another. Where a man employs another by parol as agent to purchase land for him, and the latter buys it accordingly in his own name, and no part of the purchase money was paid by the principal, Equity will not compel the agent to convey the estate to him. 2 Story's Eq. Jur. 445, § 1201; 5 Johns. Ch. R. 19.

If the person who sets up a resulting trust has paid no money, he cannot show by parol proof that the purchase was made for his benefit, or on his account. This would be to overturn the Statute of Frauds, as was ruled by Lord Keeper Henly, in the case of *Bartlett* v. *Pickersgill*, 4 East, 577, note; *Hughes* v. *Moore*, 7 Cranch, 176; 2 Johns. Ch. R. 408, top page.

"The whole foundation of the trust is the payment of the purchase money, and that must be clearly proved." Ib.

The plaintiff in this case does not pretend to have paid any part of the consideration for the purchase of the land. The defendant purchased the land at the public sales, and paid the money himself without any advance by the plaintiff. There is, then, no pretext for setting up a resulting trust here, and all parol proof for that purpose is inadmissible.

To admit it would be repealing the Statute of Frauds and would endanger the security of real property resting on title deeds, &c. For the trust arises out of the circumstance that the moneys of the real, and not the nominal purchaser

formed at the time the consideration of that purchase, and became converted into land.

The plaintiff relies upon the case of *Boyd* v. *McLean*, 1 Johns. Ch. R. 582, to show that he substantially paid the purchase money. In that case, the plaintiff had entered into articles of agreement with Colden to purchase a lot of land for $1000, to be paid in four years, and went in possession under the agreement to purchase. There was an express agreement on the part of McLean to loan the money to plaintiff to pay Colden the amount due on the contract, and to take the deed in his own name as security. Colden was consulted and agreed to it. The money was paid by Ross, as the agent of the defendant. The defendant afterwards frequently acknowledged it was a loan, and that he took the deed only as security, and that the plaintiff might have two or three years to redeem, &c. That case differs entirely from the facts in this: There the plaintiff had an interest in the land, under his contract; there was an actual loan, and time given to redeem; it all rested in parol, and no written agreement made stipulating the rights of the parties. There the defendant paid off the plaintiff's debt on a contract, and succeeded to the plaintiff's rights under the contract. He held as trustee under the plaintiff's contract.

In this case the plaintiffs had no interest in the land. It was never understood by the parties, or acknowledged by the defendant, that he loaned the money, or that the plaintiffs had any right to redeem.

3. There can be no resulting trust where the parties have entered into a written agreement, stipulating their rights. 6 Johns. Ch. R. 111, 116; 3 Greenl. 399.

These cases decide, that where the rights of the parties are stipulated and adjusted by written instruments, the instruments must speak for themselves, by expression or implication, and no extrinsic collateral evidence can be received, to ingraft other or additional trusts upon the deed by proof of intention, unless upon a ground of fraud. There is no allegation, in this case, of any misrepresentation, fraud or mistake.

Where parties have reduced their contract to writing, the written instrument alone is to be resorted to for the measure of their liability, and the extent of the contract is to be gathered from the writing only, unaffected by parol testimony. *Chadwick* v. *Perkins*, 3 Greenl. 399.

Sutphen and Ballard treated with Taylor for this land as *purchasers*, and cannot now claim that there was *a trust.* 4 Johns. Ch. R. 242–4.

The law never implies a trust, unless the Court, upon the consideration of all the circumstances, presumes there was a declaration of trust, either by word or writing, though the plain and direct proof thereof be not extant. The law never implies, the Court never presumes a trust, but in case of absolute necessity. 2 Story's Eq. Jur. 438, § 1195, and note.

In this case, so far from there being any evidence to warrant the Court in presuming that a declaration of trust was made, the evidence is conclusive to show that it never was contemplated by either party that Taylor should hold these lands in trust.

II. The contract was not usurious.

The substance of the transaction was: Public lands were advertised for sale; plaintiff applied to Taylor for a loan of money to purchase land with; Taylor refused to loan him the money, but proposed to purchase the land himself, and then sell the land to Sutphen and Ballard, on a credit of four years, at an advance in profit that should be equal to thirty per cent. a year.

Taylor purchased the land in his own name, and paid his own money for it, at $1·25 per acre, amounting to    $1,100
A profit, or premium of 30 per cent. on the same, for
     four years, amounted to                   1,320

         Amount,                     $2,420

and Taylor agreed with Sutphen and Ballard to sell said land, 800 acres, to them for that sum in four years.

This transaction was not usurious:

1. The plaintiff had no interest or equity in the loan. Taylor had the same right as the plaintiff, or any other person, to purchase.

2. Taylor made the purchase in his own name, and paid his own money for it.

3. There was no loan, or borrowing of money.

4. Taylor, having purchased the lands in his own name, and paid his own money for them, held them absolutely as his own.

All parol agreements he may have made with the plaintiff, in relation to the lands, are void by the Statute of Frauds. 5 Cowen, 162; 5 Johns. Ch. R. 19; 4 Johns. 242.

Taylor had a right to sell the land to the plaintiff for whatever sum he pleased.

After Taylor purchased the land, there was no privity of estate or title between the plaintiffs and the land.

5. Because there was an application by the plaintiff for the loan of money, and, although the premium, or profit, which Taylor agreed to sell the land for, was called *interest*, that does not make it so.

It is the duty of the Court to look, not at the *form* and words used, but to the *substance* of the transaction. 14 Eng. Com. Law R. 82; 9 Peters, 449, 450, 452.

6. There are two classes of cases where a loan connected with the purchase of property has been held to be usurious. 1. Where a person applies to another for a loan of money, and he refuses to make the loan unless the person applying for the loan will purchase of him property for an amount greatly exceeding its actual value; such loans are usurious. 1 Johns. Ch. R. 536 9 Peters, 458. The case at bar does not come within the principle of that case. Hence it is not pretended that the property is worth less than the plaintiff has contracted to pay for it. 2. Where a person for the purpose of converting an usurious loan purchases of the borrower property, and at the same time takes from the borrower an article to re-purchase the property. *Delano* v. *Rood*, 1 Gilm. 690; 9 Peters, 419.

In all such cases, there is a privity of estate and title between the borrower of the money and the property he sells, and he agrees to re-purchase. Here there was no privity of title between Sutphen and the land; he never owned the land; he could not re-purchase what he never owned and never

sold. He acknowledged it to be the land of Taylor; treated with Taylor for the purchase of the land from him.

It was not the intention of the Legislature to interfere with individuals in their ordinary transactions of buying and selling, or other arrangements made with 'the view to convenience or profit. 9 Peters, 419, marginal note.

7. It has been generally understood by lawyers and business men that such a transaction was not usurious. Persons who have money are allowed to embark in speculations of buying and selling, and it never was usury. He bought this land of the Government, and sold it to Sutphen. The contract is not on interest; and 120 per cent. is not a large per cent. on such an investment, for there is hazzard in it. That was a much stronger case than this, and was decided not to be usurious. 2 Johns. 242.

8. As to the $100 lent to Sutphen. That was a part of the bargain, a part of the price that Taylor sold his land for. He gave Sutphen $100 and sold him 800 acres of land for $2,420, payable in four years, without interest; there was no interest charged on the $100.

9. But if the Court should consider that the $100 made the contract usurious, it would only affect the contract *pro tanto.*

III. A deed cannot be impeached, controlled or affected by the Statute of Usury. The Statute of Usury only applies to "any contract or assurance for the payment of money," and not to a deed of bargain and sale. Rev. Stat. 349, § 2, 3; 13 Mass. 443; Ib. 104.

1. A deed is not an assurance for the payment of money. Where the title to real estate is absolutely vested by deed of bargain and sale, it shall not be disturbed by proof that all, or a part of the consideration was usurious. 7 Greenl. 435; 1 Johns. Cases, 161.

The plaintiff in this case, on the allegation that the title of Taylor to the land under his purchase from the United States was upon an usurious consideration, attempts to defeat his title and compel him to convey the land to the plaintiff.

2. The deed not being an "assurance" for the payment of money or other thing, does not come within the Statute of Usury, and this Court has no power under that statute to

decree it usurious in the hands of Taylor, or do any thing to impeach or control the title which the defendants have acquired under the deed. The Court, in this action, can only adjudicate on the contract or title bond, and cannot divest the defendants of their title to the land.

The Statute of Usury in Virginia and Kentucky and some of the other States extends to conveyances of land; therefore, the decisions made in those States in impeaching and controlling deeds or conveyances of land are made under authority of their statutes and are not law here. 1 Tucker's Com. 379; 2 Dig. Ky. Stat. 1226; 1 Caines' Cases, 161; 7 Greenl. 435; 13 Mass. 104, 443.

IV. There is nothing stated in the bill, nor does the plaintiff make out such a case as gives the Court jurisdiction. It is not a bill for specific performance, but a mere bill to relieve the plaintiff from the performance of his contract on the allegation of usury. The plaintiff had an adequate remedy at law when sued on the contract, and there is nothing in the case to show that the plaintiff has not such a remedy. The statute in relation to usury contemplates that it can only be enforced in an action at law, on an assurance for the payment of money. Rev. Stat. 359. The question of usury can only arise upon the pleadings in the case.

V. The case made out by the pleadings and proof bring the case directly within the provision of the Act of Congress of 31st March, 1830, which makes all agreements to pay a premium to the purchaser of public lands, and all bonds and obligations growing out of the same, void, &c. and the only relief the Court can give in this cause is to declare the title bond void. 4 Story's Laws, 2188; Constitution of U. S. Art. 4, § 3; Art. 4 of Ordinance of 1787; *Prigg* v. *The Commonwealth of Pennsylvania*, 16 Peters, 539; 4 Scam. 512.

Where two or more persons enter into a fraudulent transaction, or a transaction in violation of law, a Court will give no relief to either of them. 3 Paige, 154; 5 Wend. 579; 2 Peters' Cond. R. 298, in note 309–10; Story on Conflict of Laws, 203; 5 Johns. 333; 16 do. 486; 2 Kent's Com. 467.

VI. The decree in this case is erroneous for not decreeing that the purchase money, or money paid into Court should be paid to the defendants. The bill shows that the money was paid into Court subject to the order of the Court. No relief can be granted in usury cases in Chancery without decreeing, in the first place, the payment of the principal debt with legal interest. 1 Story's Eq. Jur. 300, 301; 1 Johns. Ch. R. 367; 5 do. 122.

Objections made to the form of the proceeding.

I. Sutphen, as assignee of Ballard, had no right under the said assignment to call for a deed until after payment of the whole of the purchase money mentioned in the title bond; he assigned his interest upon that condition.

II. The heirs of Wm. Taylor were not properly made parties or brought into Court so that a decree could be made against them; there was no affidavit that there were heirs whose names were unknown, or that the complainant did not know the names of the heirs. Gale's Stat. 257, § 5.

III. The depositions upon which the decree was made were taken on the 14th day of January, 1845, before the supplemental bill was filed, making Newton Gannie and eight others parties to this suit. These defendants were heirs and devisees at the time of the commencement of the suit, and depositions taken before they were made parties could not be used against them.

IV. There was no answer put in by the unknown heirs of Taylor, and no order taking the bill *pro confesso* against them, and still there was a decree against them. Gale's Stat. 141, §§ 8, 9.

V. The decree states it was made upon the depositions and the admissions of Ferguson by his counsel. Ferguson's counsel could make no admissions which would authorize a decree against the heirs and other defendants; as to all the defendants, except Ferguson, there was no proof.

VI. The heirs of James Duncan were not brought into Court, but the complainant proceeded to a decree against him after his decease, and after having obtained an order for publication against his heirs.

VII.   The decree directs all the defendants to convey to the complainants the land by warranty deed.

VIII.   The notices of publication do not state the nature or object of the suit.

*S. T. Logan,* and *A. T. Bledsoe,* for the appellee.

I.   The law of usury is founded in a sound public policy, and a defence under the statute is not regarded with disfavor by Courts of justice.   16 Johns. 374–8; 3 Johns. Ch. R. 399; 20 Johns. 293; 1 Paige, 547.

The law looks at the substance of the transaction; no conceivable device to conceal usury can escape its animadversion.   1 Tuck. Com. 376; *Floyer* v. *Edwards,* Cowp. 112; 13 Johns. 45; *Lowe* v. *Waller,* Doug. 736; 2 Peters, 537; 4 do. 205, 226; 9 Mass. 47; 6 Peters' Cond. R. 147.

II.   If there was a loan of the $1100 in this case, there is no doubt that interest at the rate of 30 per cent. per annum was usury.   The controversy turns, then, upon the question, whether or not this was in substance a loan.   In contemplation of law, we say, it was very clearly a loan.   No possible shift or contrivance can hide its true nature.   This is perfectly manifest from the facts of the case.

1.   Sutphen was in great need of money.   According to the deposition of Hosford, his improvements were worth $1000, and must have cost him a greater sum to make them. According to the deposition of Foster, they were worth $2000, and according to Cook's, they were worth $2000, or $2500.   He had not the money to secure his pre-emption right.   All his improvements were about to be swept away by the approaching land sales.   In this extremity, he applied to Taylor to borrow money of him.   This is a controlling circumstance.   It has been held sufficient to stamp many a transaction with the character of usury.   1 Bro. C. R. 138–51; 3 B. & P., 160; 9 Peters, 455.

2.   But in the present case, there was not merely an application for a loan; there was a treaty in regard to a loan. Both parties spoke of it as a loan at the time of the transaction.   In such case, if greater gains than legal interest be

secured, the authorities are clear and decisive, that the transaction is usurious. 2 Vesey, 155; 9 Peters, 449, 50, 53, 54, 57; 1 Call, 62; 2 Paige, 273; 20 Eng. Com. Law R. 82; 2 Peters, 536; Cowp. 406; 1 Paige, 547; 2 Stra. 916.

No case can be found in which there was a treaty about a loan, that has not been held to be a loan in substance, however artfully concealed by the form of the contract.

3. As we have seen, wherever there is a treaty in regard to a loan, no matter what form the contract is made to assume, the Court will infer that the contract has been made to assume such form by the lender in order to conceal the usury. But we have not left this to inference, we have proved that Sutphen strenuously objected to the contract's being thrown into its present form, and that it was forced upon his necessities by the lender.

4. Taylor declared that he did not want the land. He wanted his money back with 30 per cent. per annum. Now, whatever may be the form of the contract, if a man, at the time of parting with his money, secures the repayment of it with more than legal interest, he is guilty of usury. The contract contains all the essential features of a loan, and the extra legal gains are usurious. *Floyer* v. *Sherard*, Amb. 19; 3 B. & P. 159–60; 9 Peters, 447–8–50; Ibid. 438; Fonb. Eq. 189, note; 2 Edwards, 267; 1 Eq. Dig. 668, § 129.

5. There are certain stereotyped shifts and devices to which usurers have recourse in order to evade the statute. Where the contract falls into one of these forms, it is held by the authorities to be a suspicious circumstance. It is still more suspicious, when the form adopted by the person advancing the money, is one under which he has been in the habit of reserving illegal gains. 9 Peters, 458.

It is in proof, that Taylor was in the habit of lending money at thirty and forty per cent. interest, and securing its repayment in precisely the same way adopted by him in the present case.

6. Taylor took no part in the purchase of the land. The whole business was conducted under the direction of Sutphen.

7. Sutphen received $100 of the money from Taylor, the payment of which was secured with the rest.

8. Where the intention to secure more than legal interest, is either proved or confessed, it is a clear and settled case. 7 Johns. Ch. R. 77.

It is in proof, that Taylor intended to take 30 per cent. interest; he insisted upon it. Sutphen offered twenty five, but he was inflexible in his determination to have the thirty per cent., and to have it secured in his own way.

9. It is not only proved by two witnesses that such was the treaty, the understanding and final conclusion of the parties, but this also appears from the face of the written agreement itself.

10. In other respects, the terms of this contract are exceedingly hard and oppressive. Out of the necessities of Sutphen, Taylor endeavored to secure and obtain the most enormous gains. This is a badge of usury. 2 Peters, 536.

Here, then, are ten badges of usury, some of which, when taken singly, have been held to be conclusive evidence of an usurious agreement. There is no case in the books, with so many marks of usury, which has been able to pass the ordeal of a judicial investigation. The Courts of England, as well as of this country, have repeatedly declared that, "no Court can wink so hard" as not see usury in cases which were attended with only some of the circumstances of this case. And besides, we have shown not only by circumstances too strong to be resisted, but by the direct testimony of two witnesses, that a loan was agreed upon, and 30 per cent. interest expressly reserved.

III. It is contended that the contract between Taylor and Sutphen was void by the Act of Congress.

1. If Sutphen borrowed the money of Taylor, there was no agreement that Taylor should buy at one price and sell at a higher price; for Sutphen was the purchaser, and the only real purchaser in such case.

2. The person who pays the money is the purchaser, and not the person in whose name the purchase is made. And if Sutphen borrowed the money of Taylor, his money was

Ferguson *v.* Sutphen.

paid for the land, and he is in reality the purchaser. The title is held by Taylor only as security for the loan. 1 Johns. Ch. R. 582–5; 4 East, 576; 5 Johns. Ch. R. 1, 19.

3. It does not follow, that because a statute declares a contract to be null and void, that either can take advantage of it. It frequently happens, that although a statute declares a certain contract to be void, yet only one party to the contract is guilty of its violation. This is the case in regard to all those laws which declare usurious contracts to be null and void. The lender cannot set them up, because he is the guilty party; the borrower may do so, because he is not a *particeps criminis*. He is regarded as the victim of the lender, and not *in pari delicto*. 1 Story's Eq. Jur. 301–2; Phil. Ev. 1447; *Holbrook* v. *Sharpey*, 19 Vesey, 13; Fonb. Eq. 190; *Jacques* v. *Golightly*, 2 Bl. 1073; *Astley* v. *Reynolds*, 1 Stra. 915; 2 Tuck. Com. 132; 2 Saund. Pl. and Ev. 676; *Jacques* v. *Whitbly*, 1 H. Bl. 65; *Williams* v. *Hedley*, 8 East, 378.

This principle applies to every contract declared to be null and void by statute, in the making of which one of the parties is not *in pari delicto*. 1 Story's Eq. Jur. 301, § 302.

Is Sutphen, then, *particeps criminis* in regard to the contract in question? If he is not, then he only can take advantage of the Act of Congress. We say he is not a *particeps criminis*.

1. If he had paid the money under this contract, the Act in question gives him a remedy to recover back the overplus. It allows Taylor to keep what he paid for the land, and gives Sutphen the balance. This provision is utterly inconsistent with the idea that Sutphen is a guilty party. It is against all law and justice, to give a guilty party relief in Equity.

2. If any doubt could remain, it is removed by the express language of the Statute. It speaks of him, or of persons in his situation, as "the aggrieved party."

3. The Act was made for two purposes: *rst, fi*for the prevention of fraud at sales of public lands; and, *secondly*, for the benefit of purchasers. If the construction of this

Act contended for by the appellant be correct, it adds nothing to the preceding section which would cover the ground occupied by such a construction. But this section was designed for the benefit of purchasers—of just such purchasers as Sutphen—and all its provisions are directed to that end.

4. All laws, *in pari materia*, show that it is against the policy of the Government to hold such persons as Sutphen and Ballard as guilty parties. There is a vast number of laws which clearly evince a constant disposition to permit the actual occupant and improver of public lands to buy them at the Government prices. Story's Laws, 2188, 2230, 2330.

Pre-emption laws have been made, "as a *bonus*," to induce persons to settle upon and improve the public lands. 13 Peters, 499.

The object of the law in question was not directed against the actual settler and improver of public lands; it was aimed at the capitalist, who, like Taylor, has endeavored to speculate in the public lands, or out of the labor of the actual settler. U. S. Laws, Instructions and Opinions, Part 2, 270.

5. Sutphen, then, is not a guilty party, under the Act of Congress. Taylor is guilty of a violation of that Act. Sutphen is not a *particeps criminis*, in a moral point of view. Taylor is. This, in contemplation of the law, makes a great difference between the parties.

IV. The Statute of Frauds is set up, but the contract is reduced to writing. The only question is, can this contract be varied by parol on the ground of its being a security, or on the ground of usury, and specific performance be had of it in its varied form? 3 Phil Ev. 1447; 1 Mon. 72–3; 7 do. 248, 252; 5 Little, 74; *Skinner* v. *Miller*, Ib. 84; 3 J. J. Marsh. 420; *Ailhite* v. *Roberts*, 4 Dana, 174–5; *Atkinson* v. *Scott*, 1 Bay, 303; *Mitchell* v. *Preston*, 5 Day, 100; *Reading* v. *Weston*, 7 Conn. 412–13; 1 Paige, 56; 2 do. 206; 2 Peters' Cond. R. 324; 1 Johns. Ch. R. 594–7; 1 Wash. 21; 1 Bibb, 333; 6 Mon. 154; Ib. 546; 1 Johns. Ch. R. 582.

V. Sutphen, though a purchaser of Ballard's interest, is entitled to set up usury as to the whole, because he was

originally liable for the whole amount borrowed. 1 Tuck. Com. 381.

The Opinion of the Court was delivered by

TREAT, J.* On the 29th of January, 1844, Charles H. Sutphen filed a bill in Chancery in the La Salle Circuit Court against Alexander Ferguson, Davis C. Ballard, and the unknown heirs of William Taylor. The bill alleges in substance, that Sutphen and Ballard had made extensive improvements on certain tracts of public land, containing eight hundred acres, which were advertised for sale by the United States; that being destitute of money and unable to buy at the sale, they applied to William Taylor for the loan of sufficient money to purchase the lands and one other tract of eighty acres, and that it was agreed between them and Taylor, that he should loan them $1,100 for the purpose of buying the land, and that the land should be purchased in the name of Taylor to secure him in the payment of the loan; that it was mutually agreed that they should pay Taylor for the loan and forbearance $330 in each of the three following years, and $1,420 at the end of four years; that this agreement was made about one month previous to the sale, and was to be executed at the time of the sale; that on the 30th of October, 1839, in pursuance of the previous arrangement, the land was purchased in the name of Taylor at $1·25 per acre, and a written agreement was then entered into under the hands and seals of the parties; and which agreement is made part of the bill, and is substantially to the effect, that Taylor agrees to sell to Sutphen and Ballard the lands for $2,420, to be paid as before stated, and upon the payment thereof, to convey them the lands so as to vest in them a perfect and unincumbered title, and Sutphen and Ballard covenant to make the payments, and in default of any of the payments being made, Taylor is, at his election, authorized to declare the contract at an end, and in the event of his doing so, Sutphen and Ballard are to forfeit absolutely all of the previous payments, and thenceforward become the

---

* Justices THOMAS and DENNING did not sit in this case.

tenants at will of Taylor at a rent equal to an interest of ten per centum per annum on $2,420, payable quarter yearly; and the bill then alleges that the written agreement was made in pursuance of the original verbal contract, and the purchase was made in the name of Taylor for the benefit of Sutphen and Ballard, subject to the payment of the loan, and that the purchase was so made for the purpose of avoiding the question of usury; that the one thousand and one hundred dollars was advanced as a loan for the purpose of purchasing the land described in the agreement, and one other eighty acre lot; that Taylor had full knowledge of the improvements in the lands, and purchased them in his own name to avoid the appearance of usury, promising and agreeing to convey them to Sutphen and Ballard on the payment of $2,420, it being expressly understood that $1,320 was to be paid by them for the forbearance of $1,100, for the period of four years; that the sum of $330, specified in the agreement as payable annually, was the amount of interest to be paid annually on the loan of $1,100, amounting to thirty per centum per annum; that on the 1st of October, 1840, Ballard, for a valuable consideration, by an instrument in writing (which is made part of the bill,) assigned his interest in the land to Sutphen, and requested Taylor to make the conveyance to Sutphen when the conditions of the written agreement were performed; that on the 26th of December, 1840, Sutphen paid to Taylor on the contract the sum of $330; that Taylor died in 1842, leaving the defendant Ferguson, his executor, but whether he left any heirs complainant is ignorant; that there is now due on the loan and six per cent. interest thereon, deducting the $330 paid, the sum of $989·41, which sum the complainant has deposited with the clerk, subject to the order of the Court; that complainant expressly releases Taylor and his representatives from all penalties under the usury laws, and is ready to pay the sum of $1,100 and lawful interest from the time of the loan, deducting the amount already paid to Taylor; and the complainant waives the oaths of the defendants to their answers, and prays for a conveyance of the land, and for general relief.

On the day the bill was filed, the complainant filed an affidavit, stating the non-residence of all the defendants; and a summons was issued against them, which was returned not found. Due notice of the pendency of the suit was given to the defendants; and at the succeeding March term, the bill was taken for confessed, against the defendants. The money brought into Court by the complainant was placed in the hands of a receiver, who gave bond to pay it over on the order of the Court.

On the 7th of November, 1844, Ferguson was permitted to file his answer, in which he admits that Taylor purchased the lands at the public sale, at $1·25 per acre, but alleges that he purchased with his own funds, and for his own benefit; expressly denies all of the allegations of the bill respecting a loan of money, and any agreement concerning the land prior to the day of sale, but insists if there was any such arrangement, it was contrary to the provisions of an Act of Congress, entitled "*An Act for the relief of purchasers of public lands, and for the suppression of fraudulent practices at the public sales of the lands of the United States,*" approved, March 31st, 1830; admits the execution of the written agreement, but insists that it was made in pursuance of a *bona fide* sale of the land after the purchase thereof from the Government; denies that the written agreement was made in pursuance of any previous parol contract, but insists if there was any such parol contract before the purchase of the land, it was void by the Statute of Frauds; admits the payment of $330, and alleges that the balance is justly due and unpaid; admits the death of Taylor, and states, that he left the defendant and James Duncan, since deceased, his executors and residuary legatees, and exhibits a copy of the will of Taylor, showing who were his heirs and legatees.

On the coming in of the answer, the complainant obtained an order of publication against the unknown heirs of James Duncan, but no steps were ever taken under the order. On the 15th of January, 1845, the complainant filed a supplemental bill, making Newton Gannie, Nathaniel Forquer, George Porter, Elspit Porter, William Primrose, Elizabeth

Primrose, George Taylor, James Duncan and Mrs. Taylor, the persons described in the will as the heirs and legatees of William Taylor, defendants; and on affidavit of their non-residence, notice of the pendency of the suit was regularly given, and the bill taken *pro confesso* against them.

On the 14th of January, 1845, the complainant took the depositions of John I. Cook, Amos Foster, and Abraham P. Hosford. This was all the testimony in the case, except an admission of Ferguson, that Ballard had assigned his interest in the land as alleged in the bill. The witness Cook deposed, that Sutphen and Ballard settled on the lands in question in 1834, and continued to occupy them till after the land sales; their improvements were worth $2·000 at the time of the land sales; that in September, 1839, Sutphen applied to Taylor to borrow $1,100, with which to buy the lands, and Taylor, after ascertaining the character of the improvements, agreed to let him have the money; it took them some time to agree on the terms, as Taylor was loaning money at a greater rate of interest than Sutphen thought he could afford to pay; Taylor said he was loaning money to the settlers to buy their land with at thirty-five and fifty per cent interest, but he would let Sutphen and Ballard have the money at thirty per cent., as they had valuable improvements, and wanted a large amount of money; Sutphen tried to get the money at twenty five per cent, but Taylor said he could do better with his money than to loan it at that rate; Sutphen proposed to take the money and secure Taylor by personal property, or by procuring good men to indorse his paper, but Taylor refused to let the money go in that way, and said that he would have the land bid off in his name, and take that in security in preference to any thing else, and that he would not loan money to purchase lands that were not improved, as the improvements were his chief security; Sutphen, on inquiry, finding money to be scarce, agreed to borrow the money of Taylor; he was to have $1,100 for four years, and was to pay Taylor interest at the rate of thirty per cent, and for the security of the money, he was to bid off the lands in the name of Taylor,

and Taylor was to give a title bond to convey the land on the payment of the money and interest; Taylor said he did not want the land, but his money and the thirty per cent interest; witness was present at the land sales, and the lands described in the written agreement were bid off in the name of Taylor, under the direction of Sutphen; and Taylor paid the purchase money, $1000, into the land office and received the certificates of purchase. Foster testified, that he saw Taylor a day or two previous to the land sales, and Taylor told him that Sutphen had applied to him for $1000, or $1,100, with which to buy ten or eleven lots of land, and that he had agreed to let him have the money at thirty per cent. interest; Taylor said he was to take the certificates in his own name as security, and give Sutphen a bond for a deed, and he would convey the land to Sutphen and Ballard at the end of four years; he said he would not invest his money in land, and did not want the land; in the evening after the sale, Taylor came into the land office and received the certificates, and in addition to the $1000 to pay for the lots purchased in his name, he handed Sutphen $100 to buy another lot in his (Sutphen's) name; the written agreement was already drawn, and the $100 was included in the amount specified in it; Taylor was not present at the sale, but the land was bid off under the direction of Sutphen; the improvements were worth $2000. Hosford testified, that he was present at the land sale, and bid off the lands in the name of Taylor, at the request of Sutphen; the improvements originally cost $2000, and at the time of the sale were worth at least $1000.

The cause was heard at the March term 1845, and a decree entered, that the defendants convey the lands to the complainant by deed of warranty, so as to vest in him an indefeasible estate in fee simple from all incumbrances, and that each party pay their own costs. An appeal was prosecuted by the defendant Ferguson.

The principal question arising on this record is, whether the contract between the parties was usurious. The law against usury is founded in principles of public policy, prin-

Ferguson v. Sulphen.

ciples that have been for ages recognized, and almost universally adopted. Without inquiring into the policy or justice of the statutes for the prevention of usury, it is the imperative duty of the judicial tribunals faithfully to execute them. If there is any injustice or impolicy in these enactments, the fault rests with the Legislature, and it must provide the proper corrective, and not the Courts. Whenever the injured party invokes the aid of the Courts, and presents a case clearly within the statute, there should not be the least hesitation in applying the appropriate remedy. The only effectual mode of discouraging and preventing the practice of usury, is by a rigid enforcement of the provisions of the statute. If a case comes within the mischief of the statute, it should be held to be within the remedy. And this seems to be the principle on which these statutes have everywhere been construed and administered. The real inquiry in every case is, whether there has been a borrowing and lending at a greater rate of interest than the law allows; and this becomes purely a question of fact, to be determined from all the circumstances of the particular case. The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it. No imaginable act or contrivance to cover up and conceal the usury, will avail the parties. They will not be permitted successfully to evade the provisions of the statute by any conceivable scheme or expedient. The Courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction. And if upon such investigation, it appears that there was in substance a loan at an illegal rate of interest, no matter what form or shape the contract has been made to assume, it will be declared to be usurious, and the proper remedy applied. *Floyer* v. *Edwards*, Cowp. 112; *Lowe* v. *Waller*, Doug. 736; *Dunham* v. *Dey*, 13 Johns. 40; *The Bank* v. *Owens*, 2 Peters, 527; *Lloyd* v. *Scott*, 4 do. 205; *Scott* v. *Lloyd*, 9 do. 418; *Dunham* v. *Gould*, 16 Johns. 367; *Barker* v. *Vansemer*, 1 Brown's Ch. R. 149; *Richards* v. *Brown*, Cowp. 770; *Colton* v. *Dunham*, 2 Paige, 267; *Morgan* v.

*Schermerhorn,* 1 do. 445; *Crippen* v. *Heermance,* 9 do. 211; *Delano* v. *Rood,* 1 Gilm. 690. Our statute, so far as it has any bearing on this case, is substantially like the statutes under which these decisions have been made. After prescribing the rate of interest, it declares that "no person or corporation shall, directly or indirectly, accept or receive in money, goods, discounts or things in action, or in any other way, any greater sum or greater value, for the loan, forbearance or discount of any money, goods or things in action, than as above described." In the opinion of the Court, this case comes clearly within the provisions of the statute, and the principles of the foregoing authorities. All of the facts and circumstances tend irresistibly to the conclusion, that there was in fact a loan of money at an unlawful rate of interest, and that it was so intended and understood by the parties. Sutphen and Ballard were in the occupancy of public lands, on which they had made extensive and valuable improvements. The lands were proclaimed for sale, and being without the means of purchasing them, their improvements were about to be swept away. In this extremity, they made application to Taylor for a loan of money, with which to save their possessions. Taylor was a money lender, and in the habit of loaning money to settlers at an exorbitant rate of interest. In consequence of the extent of their improvements, and the large amount they wished to borrow, he offered to let them have the money at thirty per cent. interest. Sutphen endeavored to procure the money at a less rate, but finding that he could not obtain it elsewhere, and that Taylor was inflexible in his demands, he acceded to the proposal. It was then expressly agreed that Taylor should advance them $1,100, to be returned at the end of four years, and to bear an interest of thirty per cent. per annum. For the purpose of securing Taylor, the land was to be bid off in his name, and he was to execute a bond for the conveyance of the land, upon full payment of the amount borrowed and the stipulated interest. This agreement was carried into effect. Sutphen caused the land to be bid off in the name of Taylor, and Taylor paid the purchase money. A written agreement

was then entered into, by which Sutphen and Ballard agreed to pay the gross amount of the money advanced and the illegal interest; and Taylor agreed to convey them the land on full payment being made. These facts appear from the testimony of two credible witnesses familiar with all the circumstances of the case. There is nothing in the case to contradict their statements, or give any different coloring to the transaction. We cannot entertain the slightest doubt but that the contract was usurious. There were all the ingredients which constitute usury. There was a treaty concerning a loan of money, and the negotiation resulted in an agreement for a loan. The amount of the loan was to be repaid with unlawful interest. All this was designed by the parties. The agreement was executed. There was an express understanding on the part of the borrowers to pay to the lender, at all events, the amount of money borrowed and the illegal interest. It is perfectly idle to say that there was a *bona fide* sale of the land. Taylor disclaimed all idea of purchasing the land for his own benefit; he would only take it as security. The bidding off of the land in his name, and the execution of the written agreement, was only a device to put the contract in the form of a sale, and thereby conceal the usury. It was one of those contrivances to which usurers constantly have recourse, to evade the provisions of the statute. If there was a sale of the land, why was the $100, paid to Sutphen and not included in the purchase money, carried into the written agreement and made to bear an interest of thirty per cent.

The Statute of Frauds is set up by the answer. There is a written contract. The only question is, can this contract be varied by parol, and specific performance be had of it in its varied form. We were referred to the cases of *Flint* v. *Sheldon*, 13 Mass. 443, and *Hale* v. *Jewell*, 7 Greenl. 435, as establishing the rule, that a deed absolute on its face cannot be impeached by parol proof that the consideration was usurious. It is true, it was so decided in those cases, but the actions were at Law, and the Courts place their decisions on the ground, that parol evidence was inadmissible to show

that the deeds were only intended as.mortgages. But whatever may be the correct rule at Law on this last question, in Equity the doctrine is firmly settled that a conveyance, absolute in its terms, may by parol evidence be shown to have been designed by the parties as a mortgage. 4 Kent's Com. 142; 2 Story's Eq. Jur. § 1018. On this principle the complainant would be permitted to show that the legal estate was vested in Taylor only for the purpose of securing him in the payment of the money loaned and the interest. But the case stands on higher ground. In Equity, no form which can be given to a particular contract will preclude the borrower from the introduction of evidence to impeach it on the ground of usury. It is not the form, but the nature and substance of the contract, which must determine whether the instrument be not a mere device to obtain more than legal interest, and colorable only to evade the provisions of the statute. Where usury is alleged, it may be proved by parol, and as a consequence, the written contracts of the parties may by the same kind of evidence be varied and contradicted; such evidence is competent to show that a contract in the form of an absolute sale, was, in truth, but a security for an usurious loan. 3 Phillips' Ev. 1447, note 968; *Lindley* v. *Sharpe*, 7 Monroe, 248; *Fenwick* v. *Ratliff*, 6 do. 154; *Murphy* v. *Trigg*, 1 do. 72. If this were not the rule, the statute might be easily evaded. The transaction might be made to assume the form of a sale, and the lender would thereby be enabled to receive exorbitant gains against the express prohibitions of the statute.

The complainant has pursued the proper course to obtain relief against the illegal contract. The borrower of money on an usurious contract, may tender to the lender; or bring into Court for his use, the amount actually advanced with the legal interest, and then file his bill for relief; and the Court will relieve him from the payment of the excess, and declare the securities to be void, and when necessary, direct them to be delivered up and cancelled; thus discriminating between the sound and vicious parts of the contract, preserving the former, and repudiating the latter. *Rogers* v. *Rathbone*, 1 Johns. Ch. R. 367; *Fanning* v. *Dunham*, 5

do. 122; 1 Story's Eq. Jur. § 301. Such a disposition of the contract does ample justice to the parties. The lender is relieved from the penalties imposed by the statute, and allowed to receive back the money loaned with legal interest. The application of the borrower for relief, under such restrictions, ought not to be regarded with disfavor by the Court. Sutphen may set up usury as to the entire contract. Although a purchaser of the interest of Ballard, he was originally liable to pay the whole amount of the loan and interest. Having covenanted to pay the whole, he has the right to be relieved against the payment of all of the illegal interest.

It is insisted that the proceedings against the unkown heirs of Taylor were not in pursuance of the statute. We do not deem it necessary to examine this question. The case as against the heirs of Taylor, as unknown persons, was virtually abandoned on the coming in of the answer of Ferguson. A supplemental bill was then filed, making, "the heirs and devisees of Taylor, defendants," by their respective names; and they were regularly brought before the Court by notice of the pendency of the suit, and the bill taken for confessed against them for the want of an answer. This superseded the necessity for any proceeding against them as unknown persons.

It is also insisted that the decree was unauthorized as to the heirs and devisees of Taylor, the proofs having been taken before they were made parties to the suit. Failing to answer the bill and put its allegations in issue, no proof was necessary as to them. It was purely a matter of discretion with the Court, whether it would require the complainant to make proof against the defendants in default.

It is further insisted that the decree, as to James Duncan, is erroneous. The answer stated the death of Duncan, and the complainant, thereupon, obtained an order of publication against his heirs, but they were never made parties to the case, nor were any proceedings had under the order. Subsequently, Duncan was made a defendant, as one of the devisees of Taylor, and the suit properly proceeded to a decree against him. There was no proof of the death of Dun-

can, which the complainant was bound to regard. For aught appearing in the case, he is still living. The statement in the answer, of the death of Duncan, was not evidence, the answer not being sworn to. *Willis* v. *Henderson*, 4 Scam. 13.

The decree is objected to, because it does not direct the money to be paid to the defendants. The Court, no doubt, omitted to make any order respecting the money, because it was not satisfied which of the defendants was entitled to receive it. The Court has still the entire control of the fund, and will allow it to be withdrawn by the party showing that he is entitled to it. If it belongs to the appellant, he has only to apply to the Circuit Court, and make satisfactory proof, and obtain an order directing the receiver to pay it over to him.

It is contended, by the counsel for the appellant, that the contract between the parties, as shown by the proof, is in direct violation of the Act of Congress referred to in the answer, and that the only relief, if any, which the Court can give the complainant is, to declare the written agreement to be void. The fourth section of the Act prohibits, under severe penalties, all agreements and acts to prevent persons from bidding on or purchasing land at the public sales. This section does not embrace the present case, for the contract was not calculated to prevent competition at the sale, and thereby injure and defraud the Government. The fifth section provides, "that if any person or persons shall, before or at the time of the public sale of any of the lands of the United States, enter into any contract, bargain, agreement, or secret understanding, with any other person, or persons, proposing to purchase such land, to pay or give to such purchasers, for such land, a sum of money, or other article of property, over and above the price at which the land may or shall be bid off by such purchasers, every such contract, bargain, agreement, or secret understanding, and every bond, obligation, or writing of any kind whatsoever, founded upon, or growing out of the same, shall be utterly null and void. And any person, or persons, being a party

to such contract, bargain, agreement, or secret understanding, who shall or may pay to such purchasers any sum of money, or other article of property, as aforesaid, over and above the purchase money of such land, may sue for and recover such excess from such purchasers in any Court having jurisdiction of the same. And if the party aggrieved have no legal evidence of such contract, bargain, agreement, or secret understanding, or of the payment of the excess aforesaid, he may, by bill in Equity, compel such purchasers to make discovery thereof; and if, in such case, the complainant shall ask for relief, the Court in which the bill is pending may proceed to final decree between the parties to the same: provided, every such suit, either in Law or Equity, shall be commenced within six years next after the sale of said land by the United States." Story's Laws, 2187.

If the contract comes within the provisions of this section, we are inclined to the opinion, that the representatives of Taylor cannot set up the Act of Congress as a bar to the relief sought by the bill. As the counsel for the complainant truly remarked, it does not follow because a statute declares a certain contract to be void, that either of the contracting parties can take advantage of it. A statute may declare a contract to be void, and still but one of the parties be guilty of its violation. Enactments of this character are often made for the purpose of protecting one class of men from the oppression and impositions of another class of men; and in such cases, the really guilty party is never allowed any relief under the statute, or permitted to set up the statute as a defence to relief sought by the other party. Such is the case with all laws, which declare usurious contracts to be null and void. The lender is never allowed to take advantage of the statute, because he is the guilty party; the borrower may do so, because he is not a *particeps criminis.* He is regarded as the victim of the usurer, and not in *pari delicto.* This principle applies to every contract declared to be void by the statute, in the making of which but one of the parties is in *pari delicto. Browning* v. *Morris,* Cowper, 790; *Williams* v. *Headley,* 8 East, 378; 1 Story's Eq. Jur.

§ 298 to 305. The object of this section was not to prevent fraudulent practices at the land sales, for they are provided against in the preceding section. The real design evidently was, to protect men in the condition of the complainant from the exactions of the speculator and money lender. It was to prevent the latter from taking undue advantage of the situation and necessities of the former. This seems to be the aim of all the provisions of the section. If the purchaser has made payment, he may recover back the excess. He may file a bill in Equity and obtain relief. He is described as "the aggrieved party." The remedies are all directed against the seller of the land, and given to the purchaser. This seems to be conclusive of the view, that Congress only considered the seller as the guilty party. If the purchaser was regarded as a *particeps criminis*, why allow him relief both at Law and in Equity? It is contrary to all precedent to give a guilty party relief in Equity. The remedies are given to the purchaser on the ground that he is not in *pari delicto*. It is the opinion of the Court, that the provisions of this section must receive the same construction as laws for the prevention of usury; and that if the complainant was not entitled under our statute to the relief claimed by the bill, he would be under the Act of Congress in question.

The decree of the Circuit Court is affirmed with costs.

*Decree affirmed.*