Moncure, J.
delivered the opinion of the court.
*3 This was an action of assumpsit, brought by John F. Johnson, and afterwards revived by his executrix, against Henry Dunnington, administrator of Philip Jennings. The original declaration contained only the three common counts. There were two amended declarations. The last count of the first, and the last two counts of the second, amended declaration, were special counts; in which it was stated, that Jennings, in his life time, being, indebted to Johnson in various sums of money on various accounts, as therein mentioned, it was agreed between them that Jennings, in consideration of said indebtedness and in satisfaction and payment thereof, would sell and deliver to Johnson the following slaves, viz: Lucy, Rives, Henry and Elvira; and the said Jennings did then and there sell and deliver to said Johnson the said slaves, in payment and discharge of his indebtedness aforesaid. But the said defendant, as administrator as aforesaid, not regarding the promises and agreement of his intestate, so by him made as aforesaid, caused his action of detinue to be brought against said plaintiff for said slaves; and, upon the question of title alone, without regard to the indebtedness aforesaid, recovered a judgment for said slaves, with damages for their detention and costs y which judgment was satisfied; and the contract for said slaves, so sold and delivered as aforesaid, having been vacated as aforesaid, and rendered null and void, cause of action thereupon accrued to the plaintiff to recover of the defendant, administrator as aforesaid, the consideration money so paid for said slaves. In consideration whereof, and of assets in his hands, the defendant promised to pay the same to the plaintiff. These special counts differ somewhat in their details, but may be regarded as substantially the same, so far as it may be necessary now to consider them. I have stated, substantially, the details of the next to the last y which seems to be the least *4 objectionable. To each of them there was a general ^ demurrer, in which the plaintiff joined, and which sustained by the court. And this is the first error m this case.
These counts can only be sustained, if at all, on the ground of a failure of consideration of the contract of sale. There can be no doubt but that if money be paid on a contract of sale, which is wholly rescinded, either by the mutual consent of the parties or by virtue of a clause contained therein, or the consideration of which wholly fails, the party making such payment, if he has been guilty of no fraud or illegal conduct in the transaction, may recover back the money under the common count for money had and received. And though that is the usual and better mode of counting in such cases, there can be no legal objection to a special count, properly setting out the facts from which the cause of action arises. But it must appear with sufficient certainty, from the facts so set out, or from apt averments made in the count, that the consideration has wholly failed, and that such failure did not proceed from any fraud or illegal conduct on the part of the plaintiff. Now, let us apply this test to the counts in question. In substance, they only show a sale and delivery of slaves on the one side, and payment of the purchase money on the other, and a subsequent recovery of the slaves in an action of detinue brought by the vendor against the vendee. They do not show what connection there was, if any, between the contract of sale, and subsequent recovery of the slaves. After the sale, they may have been repurchased by the vendor from the vendee. If the contract of sale was rescinded by mutual consent of parties, or by virtue of a clause contained therein, the fact should have been so averred. So far from this, it is averred in these counts that the action of detinue was brought in dis *5 regard and violation of the contract of sale. But if so, why did the plaintiff in that action recover ? This is an enigma which ought to have been, but is no where in the declaration explained. If the sale and delivery of the slaves conferred on the vendee an J absolute title therein, how could the vendor recover them back without having previously reacquired the title ? If he recovered on his original title, unaffected by the supposed contract of sale, the recovery negatives the existence of such contract, or conclusively shows that it was void. It is difficult to conceive how a cause of action could arise out of a void contract; and I suppose it certainly could not, if the contract was rendered void by the fraud or illegal conduct of the plaintiff in the action. It should appear from the count, if special, that the contract was not so rendered void.
But it is argued for the plaintiff in error, that a good cause of action is set forth in the special counts, which is not destroyed by the subsequent transactions therein stated. It is true, these counts set forth a general indebtedness, somewhat in the form of the common counts; but they expressly charge that such indebtedness was satisfied by a sale and delivery of slaves; and rely on the supposed violation of the contract of sale, and not on the implied promise resulting from the fact of the original indebtedness, as the cause of action.
I think therefore the demurrer to the special counts was rightly sustained.
The second error assigned is, that the court rejected the plaintiff’s special replication to the defendant’s pleas of the statute of limitations.
The plaintiff sought by these replications to remove the bar of the statute, by relying on, substantially, the same statement of facts on which she had unsuccessfully relied in the special counts. I think the *6 replications werqproperly rejected, for reasons already stated, besides others. They do not show on what the supposed vendor recovered the property, after it was sold and delivered for valuable considera^on’ as aveiTe(l ™ the replications. If the contract of. sale was void, it could not have barred or suspended the right of action for the original debt; and certainly it could not, if rendered void by the fraud or illegal conduct of the vendee.
Two cases were much relied on in the argument, in support of these replications; but, I think, do not sustain them. The first is the case of Cowper v. Godmond, 23 Eng. C. L. R. 452. That was an action of assumpsit for money had and received, for the recovery of the consideration money of a void annuity, rendered void by an informality in the memorial thereof, which, under a British statute, was required to be made and registered. The annuity was granted more than six years before the action was brought, but was treated by the grantor as a subsisting annuity within that period. The question in the case was, “ At what time did the cause of action arise?” Tindal, O. J., said, “The cause of action comprises two steps: The first is the original advance of the money by the grantee; the second, is the grantor’s election to avail himself of the defect of the memorial of annuity. The cause of action, therefore, was not complete till the last step was taken.” It is the duty of the grantee of the annuity to see that the memorial is properly made and enrolled; and if there be any defect therein, he cannot avail himself of it to avoid the contract. The grantor may treat the contract as a legal one, and perfect'it, or he may avoid it, at his option. So long as he continues to treat it as a subsisting annuity, the grantee has no cause of action against him for the consideration money. The grantee has been guilty of no fraud, but of a mere omission *7 of a legal formality; and though, by the terms of the statute, he must lose the benefit of the annuity, he is entitled to have the purchase money restored to after deducting so much of the annuity as he may have received. The difference between that case and this must be sufficiently obvious, without further remark. The other case relied on is Elmore's adm'x v. Bowles' ex'or, 7 Gratt. 385; which, I think, is also veiy different from this. There, the replication to the plea of the statute of limitations set forth a covenant between the parties, which was intended, and had the effect, to suspend the right of action on the note until the happening of a certain contingency, and then to revive it. Here, the replications set forth an executed contract of absolute sale, intended to discharge the original debt, and not to suspend the right of action therefor. If the contract was valid, it discharged the debt; if void, it does not appear how it could have suspended the right of action for the debt.
The third and last error assigned is, that the court admitted certain testimony of William B. Brown on the trial of the issues joined on the general replication to the pleas of non assumpsit and the statute of limitations. The bill of exceptions states, that while the said witness was under cross examination, the defendant’s counsel propounded to him this question: “ Do you know of any money received by John F. Johnson, in his life time, for Philip Jennings?” To the answering of which, the plaintiff objected, because the defendant had not filed with his pleas any account of payments or setoffs; but the court overruled the objection, and directed the witness to answer the question. To which opinion the plaintiff excepted. It does not appear from the bill of exceptions what answer the witness gave to the question. It may have been, that he had no knowledge on the subject; and if so, was wholly unimportant, and would *8 certainly not be a good ground for reversing the judgment. Though, in the state of the pleadings, it could have been legal evidence, if it only tended to prove a specific payment or setoff, yet it might have ^een ^eSa^- evidence, if it tended to prove that the money charged in the account on which the suit was brought, or any of it, was not loaned or advanced, as charged, but was paid out of the money of Jennings in Johnson’s hands. The evidence would then have gone to the foundation of the cause of action, and not to its discharge by payment or setoff. As was said by Judge Carr, in Rowt’s adm’x v. Kile’s adm’r, 1 Leigh 216, 223, “It is certain the jury ought to have all the evidence which is relevant: of its iveight it is to judge. But when we are called on to reverse the decision of a judge, it is incumbent on the party seeking this, to show that there is error; and to this end he ought to present to us such a case as shows the relevancy of the evidence rejected.” In that case, the evidence objected to was set out in the bill of exceptions ; and the court was only asked to presume it irrelevant because its relevancy did not appear. In this, the court is asked to presume, first that the question was answered, and then, that the answer was of such a nature as to be inadmissible. But the answer could have had no influence on the issue on the plea of the statute of limitations, on which alone a verdict was found for the defendant, and could not therefore have prejudiced the plaintiff. I think there is no error apparent in this bill of exceptions; and certainly none which can have the effect of reversing the judgment.
Exceptions were taken by the plaintiff to other opinions of the court given on the trial, which, though no errors are assigned thereon, must be briefly noticed, especially as some of them were noticed in the argument of one of the counsel for the plaintiff in error.
*9 The first of these additional exceptions was to the opinion of the court excluding the bill of sale for the slaves aforesaid, as evidence in the case. Nothing stated in the bill of exceptions to connect this bill of sale with the account on which the suit was brought; and, in the absence of such connection, which ought to appear in the record, the bill of sale was irrelevant, and properly excluded.
The next of these exceptions was to the opinion of the court excluding the record of the proceedings in the action of detinue, in which the slaves aforesaid were recovered by the defendant from the plaintiff.
There is nothing set out in the bill of exceptions to this opinion of the court to show the relevancy of the said record as evidence in the case, except the record itself; and there is nothing in that record tending to show its connection with the cause of action in this case, except the evidence set out in a bill of exceptions taken to the opinion of the court overruling a motion for a new trial; some of which evidence tended to show that the slaves had been sold and conveyed by Jennings to Johnson in payment or security of the account on which this suit was brought, and two bond debts due by the former to the latter. If it had appeared in this record that the bill of sale was avoided in such manner or for such cause as entitled Johnson to reclaim the purchase money of the slaves, or to claim payment of the debt intended to have been satisfied or secured by the bill of sale, it would then have been admissible in the case, and would have had the effect of repelling the bar of the statute of limitations. But so far from that, it appears by the record that the slaves were recovered on the ground of fraud in obtaining the execution of the bill of sale. The evidence tended to prove such fraud; and the court having instructed the jury, on the motion of the defendant in that case, that if they believed from the. *10 evidence that the hill of sale was executed without fraud, the title to said slaves was thereby vested in defendant, whether the purchase money was paid or not, the finding of the jury against the defendant was an affirmance that the bill of sale had been fraudulently- obtained. The record was therefore against, and not in favor of, the plaintiff in this action, and she cannot complain of any error in the opinion of the court which excluded.it.
The next exception was to the opinion of the court overruling the objection of the plaintiff to the introduction by the defendant, as evidence, of the record of the proceedings in a suit brought at the same time with this action, by the same plaintiff, against the same defendant, on the two bond debts above mentioned ; in which suit judgment was recovered by the plaintiff. The defendant in that case claimed, as set-offs, the damages and costs recovered in the detinue case; and also various payments claimed to have been made by Jennings to Johnson, in money, services rendered as a carpenter, cash received in rents, and hires of negroes; of which offsets, accounts were filed. The plaintiff, on the other hand, introduced an account containing all or nearly all the items of the account on which this action was brought, and offered to prove the same for the purpose of lessening any amount which the defendant might show himself entitled to as offsets to the said bonds; and the court, notwithstanding that the defendant objected, among other things, that the account was barred by the act of limitations, permitted the plaintiff to give evidence of said account, and to rely on the same before the jury. Evidence was accordingly introduced tending to prove both the setoffs and the counter setoffs, or some of them; and the jury having by their verdict disallowed the counter setoffs, at least beyond the amount of any payments claimed to have been made by Jennings to Johnson *11 as aforesaid, the judgment in that suit was evidence in this, that the claims asserted in both, and disallowed, or set off in that, were not due.
The next and last exception was to the opinion of the court refusing to instruct the jury, on the motion of the plaintiff, “ that if from the evidence adduced in the cause (and set out in the bill of exceptions) they were of opinion that the plaintiff could not, by any lawful impediment, have brought his action, or was prevented from bringing his action, by a mode of payment which afterwards failed, until a period within five years next preceding the commencement of this action, then the statute of limitations did not apply, and the plaintiff might recover, notwithstanding the lapse of time.”
I think enough has been already said to show that the court was right in refusing to give this instruction. After the bill of sale and record in the detinue suit were excluded, there was no foundation for it in the evidence. Regarding them as part of the evidence, it was for the court to construe them, and they showed nothing which could have suspended the action, or ought to repel the bar of the statute.
Upon the whole, we see no error in the judgment, and are for affirming it.
Judgment affirmed.