# Richmond.

## ROLLER v. MURRAY.

November 16, 1911.

Absent, Cardwell, J.

1. CHAMPERTY—*Recovery Refused Under Quantum Meruit.*—Champertous contracts are, in this State, unlawful and for that reason void, and compensation for services rendered under them cannot be recovered upon a *quantum meruit,* any more than upon the contracts themselves. Courts will not permit that to be done by indirection which they refuse to allow to be done directly. An agreement by an attorney to carry on litigation at his own expense is in itself illegal, and there can be no recovery either on the agreement, or for services rendered thereunder.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case:

*John E. Roller,* for the appellant.

*Conrad & Conrad* and *Holmes Conrad,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is an attachment in equity to subject the estate of a non-resident to the satisfaction of a claim alleged to be due the complainant for services rendered as attorney. The services sued for were performed under a contract sought to

be enforced in a suit between the same parties, which was held to be champertous and void by the Circuit Court of Rockingham county, whose decree was affirmed by this court. That case *(Roller v. Murray)* is reported in 107 Va. 528-547, 59 S. E. 421, where the champertous contract is set out.

The contract was held to be contrary to public policy and void, because it was an agreement by an attorney to undertake and carry on litigation at his own risk, or without costs to his client, for a share of the recovery. While it was held in that case that there could be no recovery upon the contract, the question, whether the attorney could recover the value of his services, was left open.

The contention of the complainant (appellant here) is that notwithstanding the fact that the contract under which the services sued for were rendered was contrary to public policy and void, he is entitled to recover the value of those services upon a *quantum meruit.*

Upon this question the courts are not in accord.

Page, in his work on Contracts, sec. 345, says that while such contracts are clearly void, the courts are divided as to the question whether they are illegal—that the courts which hold them to be illegal, not only do not enforce the champertous contract, but do not allow a recovery for the value of the services rendered upon a *quantum meruit,* while the courts which treat such contracts as merely void and not illegal permit a recovery upon a *quantum meruit* for the value of services rendered. Whether this statement of the learned author be entirely accurate as to the ground upon which the two lines of decision are based is not altogether clear from the decisions, since some of them do not give the reasons for their conclusion; but if that be the true distinction between the two lines of cases it would seem to render each consistent with well settled legal principles.

The general rule is that where an agreement is treated as void merely because it is not enforceable, as in cases under the statute of frauds or of parol agreements where the contract is not in writing and money is paid or services are rendered under it by one party and the other avoids it, there can be a recovery upon an implied assumpsit for the money paid or the value of the services rendered. In such cases there has been the mere omission of a legal formality, and while by the terms of the statute he must lose the benefit of his contract, yet there being nothing illegal or immoral in it he is entitled to be compensated for the services rendered under it. See *Johnson* v. *Jennings*, 10 Gratt. 1, 6-7, 60 Am. Dec. 323; 1 Smith's Lead. Cases (5th Am. ed.) note to *Peter* v. *Compton*, at p. 438; Pollock on Contracts (Wald's ed.), pp. 597-599, 609.

On the other hand it is also well settled, as a general rule, that where the contract is illegal because contrary to positive law or against public policy, an action cannot be maintained either to enforce it directly or to recover the value of services rendered under it, or money paid on it. See *Johnson* v. *Jennings*, 10 Gratt. 6-7, 60 Am. Dec. 323; *Marshall* v. *Railroad Co.*, 16 How. 314, 14 L. Ed. 953 (cited with approval in *Yates & Ayres* v. *Robinson*, 80 Va. at p. 484) ; note to *Chapman* v. *Halley*, 4 Am. & Eng. Cases Ann. 712, 714-716, where numerous cases are cited; *Webb* v. *Fulcher*, 25 N. C. 485, 40 Am. Dec. 419, 420; Wald's Pollock on Contracts, pp. 233-4, 338-9.

The general rule is stated as follows in 9 Cyc. 546, and is sustained by the decided cases: "The law in short will not aid either party to an illegal agreement. It leaves the parties where it finds them. Therefore, neither a court of law nor a court of equity will aid the one in enforcing it or give damages for a breach of it, or set it aside at the suit of the other; or when the agreement has been executed in whole or in part by the payment of money or the transfer of other

property, lend its aid to recover it back. The object of the rule refusing relief to either party to an illegal contract, when the contract is executed, is not to give validity to the transaction, but to deprive the parties of all right to have either enforcement of, or relief from, the illegal agreement. . . . Money paid under an agreement which is executed, whether as the consideration or in performance of the promise, cannot be recovered back where the parties are *in pari delicto;* and goods delivered or lands conveyed under an illegal agreement are subject to the same rule."

And for like reasons the same rule would apply to services rendered.

Pollock, in his work on Contracts (Wald's ed.), after stating the general rule, that money or property paid or delivered under an unlawful agreement cannot be recovered back, says, that "the principle proper in this class of cases is that persons who have entered into dealings forbidden by law must not expect any assistance from the law, save so far as the simple refusal to enforce such an agreement is unavoidably beneficial to the party sued upon it. As it is sometimes expressed, the court is neutral between the parties. The matter is thus put by Lord Mansfield: 'The objection that a contract is immoral or illegal as between the plaintiff and defendant sounds at all times very ill in the mouth of a defendant, it is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of public policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may say so. The principle of public policy is this, *ex dolo malo non oritur actio*—no court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act, if from the plaintiff's own stating or otherwise the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no

right to be assisted. It is upon that ground that the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it, for where both are equally in fault, *potior est conditio defendentis.'* "

Whatever view be taken in some jurisdictions as to the ground upon which a champertous agreement is held to be void, whether upon the ground merely that it is not enforceable, or because it is illegal, in most jurisdictions and certainly in this State, such an agreement is considered unlawful and held to be void on that ground. Champerty is a criminal offense at common law (Bishop's Cr. Law, 6th ed., secs. 132, 134; Clark on Contracts, sec. 134; 2 Chit. on Contracts, 11th ed., 996; Wald's Pollock on Contracts, 293-4), and the common law as to champerty with respect to the validity of contracts is still in force in this State. *Nickols* v. *Kane,* 82 Va. 312; *Roller* v. *Murray,* 107 Va. at p. 344, 59 S. E. 421.

A champertous agreement being unlawful, it would seem clear that compensation for services rendered under it could not be recovered upon a *quantum meruit* any more than upon the agreement itself without overturning the very foundations upon which the rule refusing to enforce unlawful agreements is based. Of what value would the rule be if the courts permit that to be done by indirection which they refuse to allow to be done directly? Why say to the attorney, "You shall not recover upon the champertous agreement the agreed value of the services rendered by you, but you may recover upon an implied contract (which in fact never existed) the value of such services," which in this case is claimed and shown to be the same as the agreement provided for? How would any such result uphold the policy of the law, deter others from entering into

similar contracts, or promote the public good? To permit a recovery upon a *quantum meruit,* instead of discouraging, would encourage the making of such contracts, for if the client kept and performed his unlawful agreement, the attorney would get the benefit of it, and if he did not the attorney would suffer no loss, since he could recover upon the *quantum meruit* all that his services were worth. Any process of reasoning which leads to such a result we think must be unsound.

In *Butler* v. *Legro,* 62 N. H. 350, 13 Am. St. Rep. 573, it was held, that as a champertous contract was illegal, the law did not imply a promise to pay an attorney what his services were worth.

In *Thurston* v. *Percival,* 1 Pick. (Mass.) 415, an attorney, after rendering some services for his client, entered into a champertous agreement with him. At the trial of the case before Chief Justice Parker he was of opinion that the attorney, upon a *quantum meruit* for services rendered, etc., was entitled to recover the reasonable value of his services rendered prior to the making of the champertous agreement, and the jury were directed to distinguish in their verdict the value of the attorney's services rendered before and after the champertous agreement was entered into. They found a verdict accordingly, subject to the opinion of the court. When considered by the whole court it was held that the attorney was entitled to recover the value of his services rendered before the champertous agreement was entered into, but the court did not permit a recovery for services rendered under the champertous agreement. See also *Ackert* v. *Barker,* 131 Mass. 436.

In the case of *Mazureau & Hennin* v. *Morgan,* 25 La. Ann. 281, an attorney was not permitted to recover upon a *quantum meruit* the value of his services rendered under a champertous agreement.

99

In *Barngrover* v. *Pettigrew,* 128 Iowa 533, 104 N. W. 904, 111 Am. St. Rep. 206, 2 L. R. A. (N. S.) 260, in which it was held that a contract was champertous, the court said: "The appellants contend that if the agreement be held to be invalid, they are still entitled to recover the reasonable value of their services on a *quantum meruit.* But the law will not imply a promise to pay for services which are in derogation of public policy any more than it will enforce a specific contract having that object in view, and when a plaintiff cannot establish his cause of action without relying on an illegal contract or on services which by their very nature contravene public policy, he cannot recover." The illegal contract in that case was to procure a divorce.

It is claimed that there is a distinction between the right of an attorney to recover upon a *quantum meruit* for services rendered in a case where the services agreed to be rendered are in themselves illegal, and where the services to be rendered are in themselves legal, but the agreement under which they were rendered is for some other cause champertous.

There are cases that so hold, some where the contract is held to be champertous because it provides for a contingent fee for the attorney proportionate to the amount recovered, and others because it stipulated against the client's right to compromise without the attorney's consent. See *Davis* v. *Witter,* 66 Ark. 190, 49 S. W. 822, 74 Am. St. Rep. 81, 45 L. R. A. 196; *Simmons* v. *Johnson,* 69 Minn. 488, 72 N. W. 563. That class of cases seems to be based upon the ground that what the attorney agreed to do was in itself legal.

In the case under consideration, what the attorney undertook to do, viz: to carry on the litigation at his own risk or without costs to his client, was in itself illegal, and it was upon that ground that the contract was held to be

champertous. *Roller* v. *Murray, supra.* It was further held in that case that the agreement was indivisible, quoting with approval the decision of the Supreme Court of the United States in *West* v. *Child,* 21 Wall. 441, 452, 22 L. Ed. 623, in which it was held that where that which the attorney had the right to do was so blended and confused with that which was forbidden, the whole contract is a unit and indivisible. "That which is void destroys that which is good, and they perish together."

We are of opinion that to permit an attorney to recover upon a *quantum meruit* the value of his services rendered under an unlawful agreement, by which he undertook to carry on litigation at his own risk and without costs to his client for a part of the recovery would be to encourage the making of such contracts on the part of attorneys, and would furnish an easy expedient for escaping the consequences of entering into contracts in violation of laws based upon considerations of public policy.

Having reached the conclusion upon the main question involved, that there can be no recovery in this case, it is unnecessary to consider any of the other questions discussed, since their decision could not affect the result, no matter how decided.

The decree complained of must be affirmed.

*Affirmed.*