# Richmond

DONALD COHEN, TRADING AS DEECEE ASSOCIATES, AND UNITED STATES CASUALTY COMPANY V. MAYFLOWER CORPORATION.

April 25, 1955.

Record No. 4352.

Present, All the Justices.

The opinion states the case.

*Shapero & Shapero*, for the plaintiffs in error.

*P. A. Agelasto, Jr.* and *Woodward & Ward*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Mayflower Corporation, hereinafter referred to as the plaintiff, filed a motion for judgment against Donald Cohen, trading as Deecee Associates, and United States Casualty Company to recover damages for the alleged breach of two written contracts whereby Cohen had agreed, for the sum of $20,895, to furnish the necessary labor, materials and equipment and perform certain work on buildings owned by the plaintiff. Cohen, as principal, and United States Casualty Company, as surety, executed a bond in the penalty of $21,000 guaranteeing the performance of the "contract" (*sic*). There was a trial before a jury which resulted in a verdict and judgment of $21,000 in favor of the plaintiff against both defendants, and to review that judgment the present writ of error was allowed.

Mayflower Corporation owns a large 16-story brick apartment building with an adjacent one-story brick shopping

center located near the ocean front at Virginia Beach. Shortly after the completion of the buildings serious leaks developed in both of them, and to correct this condition the plaintiff asked for bids for waterproofing the buildings. The written bids of Cohen to do the work, and the acceptances thereof by the plaintiff, are printed in the margin.[1]

The performance bond, which is in the usual form, was executed on May 1, 1952.

[1]
"DEECEE ASSOCIATES
"Painting and Waterproofing Contractors
"515 West 25th Street
"Norfolk, Virginia

"April 17, 1952

"Mr. Robert B. Partrea, Manager
"Mayflower Apartments
"Virginia Beach, Virginia

"Dear Mr. Partrea:

"We offer for the sum of Twenty Thousand ($20,000) Dollars to furnish the necessary labor, materials and equipment to perform the waterproofing work outlined below:

"On all exterior walls from grade to top, we shall test out the joints in the brickwork with a hammer and chisel. Those joints which are found to be defective, as well as those which are open, shall be cut out and repointed in a neat workmanlike manner. Care shall be exercised to match as closely as possible the character and color of existing joints. After the mortar has taken a sufficient set, the entire masonry surface shall be covered with a heavy coat of our special transparent waterproofing, which we believe to be the best available clear type on the market today.

"All windows to be packed between frames and brick surfaces and then covered with a one-half inch covering of caulking compound. This material both oakum and caulking to be put completely around each window. Oakum covered by a fine strip of caulking to be put under window sill in such a way that lower window can be completely closed. A one-half inch hole to be cut in the bottom of each screen and then all raw edges to be painted to eliminate rot. All tile coping on top of building to have oakum forced up underneath overhang and then packed and covered with a one-half inch line of caulking.

"The above work is covered by our standard two-year guarantee against the penetration of water through the surfaces treated by us and a bond will be furnished to cover the performance of the contract.

"We will carry $100,000/$300,000 public liability and $25,000 property damage insurance. A certificate of the insurance will be furnished the Mayflower Corporation before work is begun.

Cohen started work on the contracts in May, 1952, and on June 26 wrote the plaintiff that the work had been completed and that the balance was due. In this letter Cohen stated in part:

"This work has been completed as of this date and we

"Work will be started thirty (30) days after the acceptance of this contract.

"Very truly yours,
"DEECEE ASSOCIATES
"Donald Cohen

"ACCEPTED: Mayflower Corporation
"By W. Taylor Johnson, President
"Date: 5/1/52"

"DEECEE ASSOCIATES
"Painting and Waterproofing Contractors
"515 West 25th Street
"Norfolk, Virginia

"April 29, 1952

"Mr. W. Taylor Johnson
"c/o Mayflower Apartments
"Virginia Beach, Virginia

"Re: Caulking of all windows, painting of all exterior trim, and waterproofing of all exterior brick surfaces on one-story Commercial Center adjacent to Mayflower Apartments.

"Dear Mr. Johnson:

"I am writing you at this time in regard to our findings and recommendations with reference to the waterproofing of the Mayflower Commercial Center located adjacent to the Mayflower Apartments.

"After a careful survey of this building, we wish to make the following recommendations:

"1. All show windows to be caulked with our special water-proofing compound.

"2. All exterior door frames to be caulked.

"3. All space underneath coping to be packed with oakum and covered with a strip of caulking.

"4. All exterior brick side walls and parapet walls to be sprayed with our special transparent waterproofing.

"5. All exterior trim to be painted with two (2) coats of oil paint including doors, facia boards, door jams, etc.

"We recommend paragraph five, as we feel painting these surfaces at this time will preserve them as the paint on them at the present time has lost all the oil in protection value.

will appreciate a check * * * which covers the following contracts:

"1. Waterproofing of the Mayflower Apartments $20,000.
"2. Waterproofing of the shopping center $895.

\* \* \* . \* \* \* \*

"As you understand, while we believe this job is one hundred per cent waterproofed right now, there is always the possibility of some small leaks appearing. Please do not hesitate to call us if this should occur."

On or about July 31, 1952, the plaintiff paid Cohen the amount due under the contracts. Shortly thereafter it was found that the buildings were still leaking badly in the locations which Cohen had attempted to remedy. Cohen was notified and on several occasions from the fall of 1952 through the early summer of 1953 he returned and attempted to correct the situation, but was unable to do so. Finally, by letter dated August 28, 1953, the plaintiff notified Cohen that in view of his failure to perform the contracts the plaintiff would have the work done by someone else and

---

"All the above work to be done in a business like manner under competent supervision.

"For all the above work our price is $895 complete. This amount is to be added to our present contract of the Mayflower Apartments and payable upon completion of said contract.

"As you well understand, we shall be glad to give bond on this work and should like to know if we are awarded this contract as soon as possible so that we may purchase materials for both contracts at the same time.

> "Yours very truly,
> "DEECEE ASSOCIATES
> "Donald Cohen

"Accepted May 1st, 1952
"By W. Taylor Johnson
"Title: President, Mayflower Corp.

"On all exterior walls from grade to top, we shall test out the joints in the brick work with a hammer and chisel. Those joints which are found to be defective, as well as those which are open, shall be cut out and repointed in a neat workmanlike manner. Care shall be exercised to match as closely as possible the character and color of existing joints.

> "Deecee Assoc.
> "Per Donald Cohen"

would look to Cohen and the surety for reimbursement for the cost thereof. A copy of this letter was sent to the surety company. In reply, both Cohen and the surety company took the position that there had been no breach of the contracts and denied liability. Thereupon the plaintiff engaged another contractor, Harry E. Paul, to waterproof the buildings at a cost of $23,500.

The evidence on behalf of the plaintiff showed that the work done by Cohen had not corrected the leaks, that numerous window frames had not been properly caulked, and that many open mortar joints in the brick walls of the apartment building had not been properly filled.

There is further evidence that Paul, the second contractor, was successful in correcting these conditions and stopping the leaks.

At the trial in the lower court the defendant admitted that the leaks had not been corrected and the buildings had not been waterproofed by Cohen's work. But they contended that under the terms of the contracts Cohen was not obligated to waterproof the buildings; that his undertaking was merely to perform certain specified work, namely, to apply mortar where required, caulk the window frames, caulk the copings, and apply waterproof paint to the outside surface of the bricks, and that this was done. It was further contended that the provision in the contract that "The above work is covered by our standard two-year guarantee against the penetration of water through the surfaces treated by us," bound Cohen to "service" for a period of two years the work done by him; that is, during the specified period Cohen would, at his own expense, attempt to correct any leaks which might develop.

These contentions are entirely devoid of merit. Cohen admitted that before he submitted his bids he examined the buildings, knew of the conditions which caused the leaks, and knew that the plaintiff wanted these corrected. It is absurd to say that in this situation the parties contemplated that Cohen was bound merely to furnish and apply the

specified materials and do the specified work, regardless of whether the desired results were accomplished. Moreover, when Cohen wrote the plaintiff on June 26 that the work had been completed he demanded payment for "Waterproofing of the Mayflower Apartments $20,000," and "Waterproofing of the shopping center $895." In the same letter he said, "while we believe this job is one hundred per cent waterproofed right now, there is always the possibility of some small leaks appearing. Please do not hesitate to call us if this should occur." This letter clearly shows that the defendant, Cohen, interpreted the contracts as placing upon him the obligation to stop the leaks and waterproof the buildings.

Accordingly, the trial court correctly instructed the jury that under the provisions of the contracts the defendant, Cohen, undertook to waterproof the walls, window frames, etc., "so as to prevent the penetration of water through these areas for a period of two years."

■ The main question in the case and that which prompted the granting of this writ of error is, What effect did the failure of the defendant, Cohen, to register as a contractor and obtain the license required by the provisions of Chapter 7, Title 54, of the Code of Virginia (§§ 54-113 to 54-145,[2] inclusive), have upon the right of the plaintiff, Mayflower Corporation, to maintain this action?

The defendants argue that since "the aggregate amount of the contracts * * * was for more than $20,000," and since Cohen had not registered and had not obtained the license required by the provisions of the chapter, the contracts were "illegal and void" under our holding in *Bowen Electric Co.* v. *Foley*, 194 Va. 92, 100, 72 S. E. (2d) 388, 393, and that consequently an action for damages for breach of the contracts and the performance bond cannot be maintained.

The statute applies "when the cost of the undertaking * * * is twenty thousand dollars or more." Code, § 54-113.

[2] The amendments to certain of these sections by Acts 1954, ch. 415, p. 514, and ch. 428, p. 523, do not affect the present litigation.

While there were actually two separate contracts, one for $20,000 and the other for $895, the case was tried in the lower court and presented to us on the basis that it involved the breach of a single contract for $20,895, the performance of which was guaranteed by a single bond. There was no apportionment of damages between the two contracts. However, if the contracts be treated as separate, the claim of illegality would, of course, apply only to the contract for $20,000, which would be within the statute. No question could then arise as to the illegality of the contract for $895, and the right to sue for its breach.

It is, of course, elementary that "A void contract is no contract at all; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach." 12 Am. Jur., Contracts, § 10, p. 507. See also, Corbin on Contracts, Vol. 5, § 993, p. 7; 17 C. J. S., Contracts, § 10, pp. 331, 332.

An agreement may be void and of no legal effect because public policy forbids that a contract be entered into with respect to the subject matter. An example of this is found in *Roller* v. *Murray*, 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202, Ann. Cas. 1913B 1088, relied on by the defendants. In that case we held that a contract whereby an attorney had agreed to carry on litigation at his own expense was "contrary to public policy and void" and that there could be no recovery either on the agreement or for services rendered thereunder.

Again, an agreement may be void and of no legal effect because the statute forbids an agreement with respect to the subject matter with which the parties are undertaking to contract. For example, where the statute forbids the sale of intoxicating liquor an agreement for such sale is void.

But the contract with which we are here concerned suffers from neither of these infirmities. There is nothing immoral or contrary to public policy in a construction contract involving $20,000 or more. Neither does the statute (Code, § 54-113 *ff*.), either expressly or impliedly, forbid

such a contract. It merely prohibits unqualified persons— that is, those who have not registered or taken out the required license—from entering into such an agreement.

There is a wealth of authority on the legal effect and consequences of contracts entered into by persons who have failed to procure licenses required by law. See Williston on Contracts, Rev. Ed., Vol. V, § 1630 *ff.*, p. 4560 *ff*; *Id.*, Vol. VI, § 1765 *ff.*, p. 5007 *ff*; Corbin on Contracts, Vol. 6, § 1510 *ff.*, p. 961 *ff*; 33 Am. Jur., Licenses, § 68 *ff.*, p. 384 *ff*; 53 C. J. S., Licenses, § 59 *ff.*, p. 711 *ff.*

While such contracts are frequently termed "void," the authorities which have considered the subject agree that they are not totally void in the sense that they are without legal effect. See Corbin on Contracts, Vol. 6, § 1510, p. 962; Williston on Contracts, Rev. Ed., Vol. V, § 1630, p. 4564, note 7, citing a number of cases recognizing that such contracts are not totally void. As Mr. Williston points out, a denial of recovery in such cases rests upon "the illegality of the plaintiff's conduct, not the nature of the transaction." Williston on Contracts, Rev. Ed., Vol. V, § 1630, p. 4562.

*Roller* v. *Murray, supra*, recognizes the difference between an agreement which from its nature is illegal and void and one which is "treated as void merely because it is not enforceable" for "omission of a legal formality." 112 Va., at page 782. See also, *Ricks, Adm'r.* v. *Sumler*, 179 Va. 571, 576, 19 S. E. (2d) 889, 891; Burks Pleading and Practice, 4th Ed., § 92, p. 194.

We have held in a number of cases that a contract entered into by one who fails to obtain a license or to register, as required by statute, is void in the sense that it is illegal and unenforceable by him in an action against an innocent party. See *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. (2d) 176; *Colbert* v. *Ashland Construction Co.*, 176 Va. 500, 11 S. E. (2d) 612; *Bowen Electric Co.* v. *Foley, supra.*

In *Bowen Electric Co.* v. *Foley, supra*, relied upon by the defendants, this court, speaking through Mr. Justice Smith, held that a construction contract, involving more than

$20,000, entered into by an unlicensed contractor "is void and there can be no recovery thereon." 194 Va., at page 100, 72 S. E. (2d), at page 393.

In *Surf Realty Co. v. Standing*, 195 Va. 431, 444, 78 S. E. (2d) 901, 908, again speaking through Mr. Justice Smith, we interpreted the *Bowen* case as holding that "a contractor who is not licensed and registered under the aforementioned statutes cannot recover the balance claimed to be due for work performed when the cost of the undertaking was more than $20,000."

In *Rohanna* v. *Vazzana*, 196 Va. 549, 551, 84 S. E. (2d) 440, 441, we interpreted the *Bowen* case as holding that, "A failure to comply with the statute precludes a recovery by the contractor on his contract."

The precise question with which we are here concerned, whether an innocent party may maintain an action for damages for breach of a contract entered into between him and an unlicensed person, has not been previously presented to this court. But it has been frequently considered in other jurisdictions and the authorities are in accord that such an action may be maintained. As is said in Corbin on Contracts, Vol. 6, § 1510, p. 962, "There can be no doubt that a bargain made by an unlicensed guilty dealer, broker, or lawyer with another person who is innocent of offense is not totally void. It would be a rare or nonexistent case in which such an innocent person could not maintain some kind of action for a breach of the agreement by the guilty party who was wrongfully engaged in business, just as an innocent girl can maintain suit for breach of promise against a man who became engaged to her, concealing the fact that he was already married to a living wife. * * *"

██ This view is based upon the principle that such innocent party is among the class of persons designed to be protected by such statutes, that he is not *in pari delicto* with the unlicensed party, and is therefore entitled to relief. Or, to state the matter another way, to deny relief to the innocent party in such cases would defeat the purpose of the

statute and penalize the person intended to be protected thereby. See Corbin on Contracts, Vol. 6, § 1540, p. 1070, etc.; Williston on Contracts, Rev. Ed., Vol. V, § 1631, p. 4568, etc.; Restatement of the Law of Contracts, § 601, p. 1116, etc.; 17 C. J. S., Contracts, § 278-b, p. 666; 12 Am. Jur., Contracts, §§ 217, 218, pp. 734-6; *Elmers* v. *Shapiro*, 91 Cal. App. (2d) 741, 205 P. (2d) 1052, 1060; *Fergus County* v. *Osweiler*, 107 Mont. 466, 86 P. (2d) 410, 411, 120 A. L. R. 1457, and authorities there cited; *Deming* v. *State ex rel. Miller*, 23 Ind. 416.

Some courts allow recovery by the innocent party upon the principle that the guilty unlicensed party is estopped to assert as a defense his failure to comply with the provisions of the statute. See *Ferguson* v. *Sutphen*, 8 Ill. 547; *Romano* v. *Brown*, 125 N. J. L. 293, 15 A. (2d) 818, 820.

Similarly, it has been uniformly held that the surety who guarantees the performance of a contract by an unlicensed person will be held liable for damages for the principal's breach of the contract. Williston on Contracts, Rev. Ed., Vol. IV, § 1217, p. 3502 *ff.*, in discussing "Illegality of the creditor's contract with the principal as a defense to the surety," points out that where the illegality of the contract is of a kind which would prevent recovery against the principal, the surety may likewise take advantage of that defense. As illustrative of this class of cases, that authority cites (at page 3503) *Basnight* v. *American Mfg. Co.*, 174 N. C. 206, 93 S. E. 734, relied on by the defendant surety in the case now before us, in which recovery against the principal and surety was denied on a bond guaranteeing the performance of an illegal lottery contract; and *Boylston Bottling Co.* v. *O'Neill*, 231 Mass. 498, 121 N. E. 411, 2 A. L. R. 902, in which recovery against the principal and surety was denied on a bond guaranteeing the performance of an illegal contract to deliver intoxicating liquors.

But, as the author goes on to say, "where the non-enforcement of an illegal contract would impose a penalty on those intended to be protected by the law, the obligation

will be enforced" against the surety. Williston on Contracts, Rev. Ed., Vol. IV, § 1217, p. 3503. See also, Restatement of the Law of Contracts, § 601, p. 1117; 72 C. J. S., Principal and Surety, § 255, p. 703; 50 Am. Jur., Suretyship, § 141, p. 998; *United States* v. *Zweben* (D. C., S. D. N. Y.), 13 F. Supp. 554, 555, and authorities there cited; *State* v. *Seabrook*, 42 S. C. 74, 20 S. E. 58. The basis of this view is that unless the bond provides otherwise, or the surety has been released by some act of the obligee, the obligation of the surety is measured by that of the principal, and the surety may assert no defense which is not available to the principal. See 50 Am. Jur., Suretyship, § 30, p. 921; *Id.*, § 140, p. 997; 72 C. J. S., Principal and Surety, § 92, p. 572.

In the present case, since the bond contained no provision limiting the liability of the surety and there was no evidence of its release by any act of the obligee plaintiff, the trial court properly instructed the jury that the obligation of the surety was "the same as that of the defendant Cohen."

 The final contention of the surety is that the plaintiff's action was prematurely brought because the bond provided that it was executed and delivered upon the condition that all disputes, claims or questions arising under the construction contract "shall be subject to arbitration in accordance with the provisions of Article 40 of the General Conditions of the Contract for the Construction of Buildings contained in the Fifth Edition of such Standard Documents aforesaid, anything to the contrary contained in such aforesaid contract notwithstanding."

It clearly appears, however, from Article 40, which is attached to and made a part of the bond, that this provision requiring arbitration refers to "disputes, claims or questions" arising during the course of the work and before final payment. The article expressly states that "in no case, however, shall the demand (for arbitration) be made later than the time of final payment." The present case does not involve a dispute or controversy which arose during the course of the work and before final payment. It involves a dispute which

arose after both of these events and therefore not within the scope of the arbitration clause. See 3 Am. Jur., Arbitration and Award, § 45, p. 877.

The other assignments of error are entirely without merit. In our opinion the judgment of the lower court is plainly right and accordingly it is

*Affirmed.*