## CIRCUIT COURT OF THE CITY OF RICHMOND

Bowlman T. Bowles, Jr., et al.

v.

John S. Davenport, III, et al.

February 1, 1985

Case No. (Chancery) G-8315-3

By JUDGE WILLARD I. WALKER

In this interesting suit by a withdrawing partner against his former law firm, the issue of the validity of a partnership agreement has been resolved.

I have ruled that a written partnership agreement, referred to in this proceeding as the Airlie Agreement, determines the plaintiffs' rights against the partnership.

One question remains. Do certain provisions of the Airlie Agreement, which reduce a partner's termination benefits if he competes with the law firm, violate Canon Two of the Code of Professional Responsibility, specifically DR 2-106? (This provision was recently recodified as DR 2-106. Previously the rule, though unchanged, was designated as DR 2-108.)

The provisions of the Airlie Agreement provide that a partner who withdraws and competes with the partnership shall receive his capital account but only

one-half as much in termination benefits in comparison to a partner who withdraws and does not compete. The termination benefits are keyed to a percentage of prior years' income and represent a stipulated or assigned interest of the withdrawing partner in the partnership's "backlog" or accounts receivable and work in process. It is a fact, not seriously in dispute, that these "termination" benefits are separate and distinct from retirement benefits in the agreement. Certainly this is true as the phrase "retirement benefits" is used in DR 2-106.

The law is clear that an agreement between lawyers that violates one of the disciplinary rules of the Code of Professional Responsibilities is void and of no effect as a matter of public policy. See, 4B Michie's Jurisprudence, Contracts, § 109 (1974); Cohen v. Mayflower Corp., 196 Va. 1153, 86 S.E.2d 860, (1955). Therefore, the question to be answered is whether the "anti-competition" phases of the Airlie Agreement violate DR 2-106.

There are any number of ethics opinions that prohibit lawyers from entering into agreements or arrangements that prohibit or directly impinge upon the right of lawyers to practice law in a given geographical area or for given clients. See, ABA Ethics Opinion No. 300 (1961), Informal Opinions Nos. 521 (1962), 1072 (1968), 1171 (1971), 1301 (1979), and 1417 (1978). See also, Virginia Ethics Opinion No. 200, which speaks generally against restrictions upon competition among lawyers.

Counsel for both sides concede that the effect of the Airlie Agreement does not directly prohibit or restrict competition. It contains no restrictive covenants that would determine when or for whom plaintiffs could engage in the practice of law. The agreement does, of course, impose an economic sanction against a withdrawing partner, if he withdraws and elects to compete. It is interesting to note that paragraph 2.2.5 of the Airlie Agreement makes no attempt to limit the time, place, or type of competition that would trigger the economic penalty against a

withdrawing partner. It is totally open-ended and without limitation. The paragraph further provides "for the purposes of this paragraph, the Executive Committee (of the partnership) shall have the right to make a final determination as to the applicability of this paragraph 2.2.5." See defendant's Exhibit 10.

The defendants rely upon Foti v. Cook, 220 Va. 800, 263 S.E.2d 430 (1980), as an example of approval by the Supreme Court of Virginia of a type of economic sanction for competition as opposed to direct prohibition. However, it must be noted that Foti decides a dispute among accounting partners and thus does not involve the question of the violation of a disciplinary rule, which I believe to be central to this case. It should also be noted that one of the three criteria used to determine the reasonableness of restrictive covenants is whether the "restriction is reasonable from the standpoint of sound public policy." I do not agree with defendants that Foti is controlling in this case.

More to the point is Ethics Opinion No. 428 of the Virginia State Bar. Attached to this letter opinion and made a part hereof is an inquiry from a law firm to the Legal Ethics Committee of the Virginia State Bar, which provides the basic facts for Ethics Opinion No. 428, also attached. Although the partnership agreement at issue there is not absolutely identical to the Airlie Agreement at issue here, in principle there is no rational distinction between the two. The essence of the Committee's opinion is that it "ties a member's right to receive termination compensation to a covenant against competition." The distinction that one agreement (Opinion No. 428), which denies benefits unless a withdrawing partner signs an agreement not to compete in the local area, and another agreement (Airlie), which denies benefits if the withdrawing partner intends to compete, is a distinction without real meaning. The effect is the same. Lawyers must not use direct restrictions of economic sanctions to impede the unfettered right of a lawyer to practice law when and for whom he pleases. Such restrictions or sanctions would be against sound public policy.

Additionally, while it is not determinative of my decision here, the utterly unlimited nature of paragraph 2.2.5 of the Airlie Agreement gives me concern. No matter where the withdrawing partner "competes," or when that "competition" takes place, he would be in violation of the contract and presumably would have to reimburse the partnership (as in Foti), even if he initially did not "compete." And, the absolute determination of what triggers paragraph 2.2.5 seems to reside in the Executive Committee of the defendant partnership. These provisions standing alone would indicate to me that the agreement is an unreasonable restriction and contrary to sound public policy.

Accordingly, paragraph 2.2.5 of the Airlie Agreement is void and of no effect. Consequently, termination benefits are to be paid in this case without regard to competition and in accordance with the other provisions of paragraph 2.2 of the Airlie Agreement.

It is my understanding that the amounts are undisputed once this decision has been made. Therefore, unless I hear promptly to the contrary, I will enter the sketch for final decree tendered by counsel for plaintiffs, which contains a statement of defendants' objections to my ruling on paragraph 2.2.5.

## APPENDIX

### June 30, 1981

Alex T. Mayo, Jr., Esquire
Chairman, Legal Ethics Committee
Virginia State Bar
Post Office Box 3508
Norfolk, Virginia 23514

Dear A. T.:

We will appreciate the opinion of your Committee with respect to whether our partnership agreement violates the provisions of DR 2-108(A) of the Virginia

Code of Professional Responsibility. Enclosed is a copy of the pertinent provision of Article V of our agreement which requires a partner to enter into an agreement restricting his right to practice law in order to receive termination compensation, other than his capital account. This would apply to a partner who voluntarily withdraws from the partnership to retire or to engage in some other business or profession, or for whatever reason.

If the Committee feels it needs additional information please advise us.

Sincerely yours,

/s/ [              ]

\* \* \*

Withdrawal - Satisfaction of Partnership Interest

A. Amount:

In the event that a partner withdraws from the partnership for any reason other than that described in Article IV, above, then in full satisfaction of his interest in the partnership, and in lieu of any other accounting, claim or action, then shall be paid by the successor partnership and accepted by him or his personal representative the following:

1. An amount equal to the value of his capital account determined as of the date of his withdrawal and computed in accordance with the provisions of Article III A.1, above; and in addition thereto:

(a) If such partner is involuntarily excluded from the partnership by a vote of not less than three-fourths of the members including himself, an amount as partner's termination compensation equal to the full amount computed in accordance with the terms of Article III A.2; or

(b) If such partner withdraws voluntarily, that is, other than by involuntary exclusion under (a) herein, an amount as partner's termination compensation equal to the full amount computed in accordance with the terms of Article III A.2, provided, that upon his withdrawal, he shall enter into an agreement in writing that if at any time within five (5) years from his withdrawal he shall engage in the practice of law within Norfolk, Portsmouth, Virginia Beach, Chesapeake, Nansemond County, Suffolk, Newport News, or Hampton, he shall reimburse all such partner's termination compensation received and shall be entitled to no further partner's termination compensation; and

(c) If such partner withdraws voluntarily and does not enter into the aforesaid agreement, no further amount, that is, he shall be entitled only to his capital account . . .

*  *  *

August 14, 1981

Dear [                    ]:

Our Committee has considered your inquiry of June 30, 1981, and is of the opinion that the provision of your partnership agreement which ties a member's right to receive termination compensation to a covenant against competition violates Disciplinary Rule 2-108. We do not consider the termination compensation provided to be "retirement benefits" within the meaning of the Disciplinary Rule.

Please let me know if you have further questions.

Very truly yours,

/s/ Alex T. Mayo, Jr.