**FLEMING STEEL COMPANY**

v.

**W.M. SCHLOSSER COMPANY, INC.,**
**(D.C. Civil No. 02–00828).**

**W.M. Schlosser Company, Inc.**

v.

**Continental Casualty Company,**
**(D.C. Civil No. 03–01338).**

**Fleming Steel Company and Continental Casualty Company, Appellants in No. 08–4617.**

W.M. Schlosser Company Inc., Appellant in No. 08–4618.

Nos. 08–4617, 08–4618.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) on Sept. 8, 2009.

Filed: Sept. 15, 2009.

Diego Correa, Esq., Todd P. Prugar, Esq., John W. Smart, Esq., Andrews & Price, Pittsburgh, PA, for Fleming Steel Company.

Michael J. Cohen, Esq., Hyattsville, MD, Peter N. Flocos, Esq., Angelica R. Shepard, Esq., K & L Gates, Pittsburgh, PA, for W.M. Schlosser Company, Inc.

Before: SCIRICA, Chief Judge, and RENDELL and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Subcontractor Fleming Steel Co. ("Fleming"), and performance bond issuer Continental Casualty Co. ("Continental"), appeal orders of the District Court granting summary judgment, damages, and attorney's fees in favor of prime contractor W.M. Schlosser Co., Inc. ("Schlosser"), on claims arising from a U.S. Navy construction contract.[1] Schlosser cross-appeals, arguing that it was awarded insufficient

---

1. The specific orders challenged by Appellants are the Order of July 10, 2006, 2006 WL 1892699, granting summary judgment, the Order of July 14, 2006, 2006 WL 1997365, dismissing objections to the special master's report and recommendations, the Judgment Order of July 14, 2006 entering judgment in favor of Schlosser, the Order of August 7, 2006 denying a motion by Appellants for reconsideration, and the Judgment Order of October 21, 2008, 2008 WL 4722511, granting additional damages pursuant to a motion by Schlosser.

interest. For the reasons discussed below, we will affirm.

We write for the benefit of the parties and only briefly summarize the relevant facts. The Navy awarded Schlosser a contract to construct a "hush house" at Naval Air Station Oceana in Virginia Beach, Virginia. A hush house is a test facility in which jet engines may be run at high power settings, and is designed to suppress the intense sound generated during such runs. Schlosser subcontracted with Fleming to produce sliding air intake doors for the facility, and Continental executed a performance bond on the subcontract. The parties agree that, under a choice of law provision, Virginia law governs the subcontract.

Key sound-suppressing components of the doors are 18 "splitter baffles," made of stainless steel and covered in fiberglass cloth. The specifications in the prime contract for these baffles were incorporated into the subcontract. Section 13300 Paragraph 2.1.5.b required the fiberglass cloth to be precisely 0.0065 inches thick, and specified that "[n]otwithstanding any other requirements of th[e] contract, no other product will be accepted." Paragraph 1.4.2.1 required Fleming to produce a full-sized pre-production specimen of a baffle that would "conform to all of the requirements of the contract including quality control, testing, form, fit, size and function and shall meet all of the requirements of the contract documents." When approved by the Navy's contracting officer, this specimen was to "serve as the reference for establishing the acceptability of all fabricated . . . baffles."

Fleming produced a sample baffle, and it is undisputed that this sample was approved by the Navy's contracting officer. Fleming then began producing the baffles intended for installation in the door. Inspections revealed that heat from Fleming's welding process burned away fiberglass cloth in certain places on nine of the production baffles. Re-inspection of the sample baffle revealed that the cloth on the approved sample also had burn spots. The Navy concluded that the burned baffles failed to meet specifications, and also determined that a repair method proposed by Fleming was inadequate. The Navy issued cure notice to Schlosser, which in turn issued cure notice to Fleming. Schlosser thereafter found Fleming to be in default, terminated the subcontract, and sought replacement baffles from another source.

Article 8 of the subcontract provided that if Schlosser terminated the subcontract due to Fleming's breach, Fleming would be liable for the costs of completion, along with other damages and expenses. Article 29 provided that, if the contract was terminated by Schlosser for its own convenience, Fleming would be entitled to the actual costs of the work and labor in place, plus a certain allowance.

Fleming filed a diversity action in the United States District Court for the Western District of Pennsylvania for breach of contract against Schlosser, arguing that the termination was for convenience. Schlosser answered with a counterclaim for breach of contract against Fleming. Schlosser also filed a claim on an indemnification theory against Continental in the United Stated District Court for the District of Virginia, which was transferred and consolidated with the former action. After discovery and a series of rulings on various motions, the District Court granted partial summary judgment on behalf of Schlosser, deciding as a matter of law that the Navy's approval of the sample baffle did not relieve Fleming from strictly complying with the written contract specifications. The District Court also granted summary judgment on behalf of Schlosser on the issue of liability. The District

Court thereafter adopted the findings of a special master with regard to damages, and also awarded attorney's fees, costs, and a portion of the prejudgment and post-judgment interest urged by Schlosser.

Fleming and Continental first challenge the District Court's grant of summary judgment on behalf of Schlosser. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment "is plenary, and we apply the same standard as the District Court." *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 95 n. 7 (3d Cir.2009). Summary judgment should be granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *Id.*

Appellants' position on what legal effect the Navy's approval of the sample baffle should have on Fleming's responsibilities required clarification in the District Court, and may not have been entirely consistent. As Schlosser frames Appellants' argument, Appellants assert that the Navy's approval of the sample waived any specifications that would otherwise have been violated by the burned fiberglass cloth. At least before us, Appellants do not argue waiver, but instead contend that, because the contract did not specifically require the absence of burn marks, there is a genuine issue of fact as to whether the baffles met the written contract specifications. We are not persuaded by either argument.

█ Fleming was required under Section 13300 Paragraph 1.4.2.1 to produce a specimen that "conform[ed] to all of the requirements of the contract." For all baffles, Paragraph 2.1.5.d established that "[n]otwithstanding *any other* requirements of th[e] contract," including presumably the specimen approval requirement, any fiberglass cloth that failed to meet the written specifications was unacceptable. (emphasis added). Moreover, the subcontract incorporated 48 C.F.R. § 52.246–12 (Aug.1996), a clause of the Federal Acquisition Regulation governing the inspection of construction, which provides that "Government inspections and tests *are for the sole benefit of the Government* and do not . . . relieve the Contractor of responsibility for providing adequate quality control measures," and also that an inspector is not "authorized to change any term or condition of the specification without the Contracting Officer's written authorization." (emphasis added). There is no evidence that the contracting officer gave any written authorization to alter the fiberglass specifications. Thus, the District Court correctly concluded that, as a matter of law, Fleming was required to comply with all contract specifications, notwithstanding the Navy's approval of the specimen baffle.

We also conclude that there is no genuine issue as to whether the baffles with burned fiberglass cloth failed to satisfy the written contract specifications. It is undisputed that Fleming's welding process burned fiberglass cloth away in certain places on the splitter baffles in question, thus altering the thickness of the cloth. It is also undisputed that Paragraph 2.1.5.d of Section 13300 of the subcontract required the fiberglass on the baffles to be 0.0065 inches in thickness. Under any reasonable interpretation of the contract, Fleming failed to meet, at a minimum, the unambiguous thickness specification of the contract at these burn points.[2] For these reasons, we will affirm the order of the

---

2. Although its decision is not under review in the instant appeal, the District Court reached this same conclusion when it denied a motion for summary judgment by Fleming by Order of August 19, 2005.

District Court granting partial summary judgment on the issue of the Navy's approval of the specimen, and summary judgment on behalf of Schlosser on the issue of liability.

Next, Appellants argue that the District Court erred by entering judgment on damages based on the recommendations of the special master. Schlosser contends that Appellants' arguments on appeal are improper because Appellants failed to submit any contrary evidence relating to damages, and never requested a hearing or trial on the issue before the District Court. Assuming, *arguendo*, that Appellants' arguments are properly before us, we have no basis to disturb the District Court's ruling. We will uphold the factual findings of a special master that are adopted by a district court, unless the findings are clearly erroneous. *Arco Pipeline Co. v. SS Trade Star*, 693 F.2d 280, 280–81 (3d Cir.1982). The special master carefully documented and supported its computation of damages, and, after making certain deductions from the amount urged, recommended an award in the amount of $640,010.43. The District Court adopted this figure and, after deducting the balance due Fleming under the subcontract, arrived at a damages figure of $354,646.43. Upon careful review of the record, we find no defect in the computation of damages, by either the special master or the District Court, that could amount to clear error.

█ Finally, Appellants argue that the District Court erred by awarding attorney's fees to Schlosser. Appellants contend that Fleming could not be liable for attorney's fees under the terms of the subcontract, and that the liability of Continental, as surety, could be no greater than the liability of Fleming. Schlosser contends, *inter alia*, that attorney's fees were available directly against Continental under the express terms of the performance bond. As the District Court noted, "Under Virginia law, the obligation of the of the surety is measured by that of the principal, 'unless the bond provides otherwise, or the surety has been released by some act of the obligee.'" (App. 62) (quoting *Cohen v. Mayflower Corp.*, 196 Va. 1153, 86 S.E.2d 860, 866 (1955)). The performance bond expressly provided that, in the event of Fleming's breach, Continental would be liable to Schlosser for "all fees, damages, and expenses, including costs and attorney's fees." (App. 138.) Since Continental was liable for attorney's fees under the terms of the performance bond, the District Court did not err in awarding such fees to Schlosser.

Schlosser cross-appealed two judgment orders,[3] arguing that it should have been awarded more prejudgment and postjudgment interest. We have carefully reviewed the record and cannot say that the District Court erred in a conclusion of law or abused its discretion with regard to the computation of interest.

For the reasons discussed above, we will AFFIRM the Orders of the District Court.

---

**3.** The specific orders challenged by the Cross-Appellant are the Judgment Order of October 21, 2008, and the Second Amended Judgment Order of February 5, 2009, 2009 WL 291165.